POWELL, *Appellant,* v. CRAWFORD.

DIVISION TWO.

1. **Slander :** PLEADING : COLLOQUIUM. Where the words charged to have been spoken of plaintiff are not slanderous *per se,* the *colloquium* must show they were slanderously used to make them actionable.

2. ———— : ———— : INNUENDO. It is not the office of the *innuendo* to make averments.

3. ———— : ————. The *colloquium* in the petition in this case *held* not to charge the plaintiff with a crime or fraud as claimed by him.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*Lubke & Muench* and *A. R. Taylor* for appellant.

(1) The petition avers that defendant in the presence of other persons who understood him charged

plaintiff with misappropriation of seventy-five cents belonging to defendant's firm, and further avers that thereby defendant intended to and did charge plaintiff with the crime of larceny or acts constituting the crime of embezzlement. As averred, the acts constituted embezzlement under our statute. R.S., sec. 3549. The punishment therefor is as for larceny. R. S., sec. 3547. The money was received by plaintiff as an employe of defendant's firm and it either belonged to them, or they ( not plaintiff ) were accountable for it to the customer. Whether as between plaintiff and defendant's firm plaintiff was entitled to any part of the money, either on this particular sale or on other accounts, was an open question. Certainly defendant had no warrant for charging a crime upon plaintiff, and in doing so he evidenced the malice which is the gist of the action for slander. If the property charged to have been stolen is the subject of larceny, the action for slander will lie. *Trimble v. Foster*, 87 Mo. 49, and cases cited. Here the money was the subject of embezzlement. The innuendo of the pleader did not enlarge upon, but gave meaning to, the words used by defendant. They were words used in a particular trade, and had a meaning different from their ordinary acceptation. This could be supplied by innuendo only, and, as supplied, the defendant admitted the meaning by his demurrer. *McManus v. Jackson*, 28 Mo. 56 ; *Bundy v. Hart*, 46 Mo. 400 ; *Cristal v. Craig*, 80 Mo. 367 ; *Boyce v. Aubuchon*, 34 Mo. App. 315. ( 2 ) The petition alleged a good cause of action for that the defendant charged plaintiff with fraud or want of integrity in his calling as a salesman. This was actionable *per se* without any allegation of special damage. Plaintiff did allege that he was greatly damaged in his business, that he lost his situation as salesman, and was unable to procure employment as such. "Any charge of dishonesty against an individual in connection with his business, whereby his character in such business may be injuriously affected, is actionable. * * * Language which

imputes to one fraud or want of integrity in his business is actionable *per se*, and special damage need not be alleged." *Noeninger v. Vogt*, 88 Mo. 589. The same rule applies when the language is spoken of a merchant's clerk. *Fowles v. Bowen*, 30 N. Y. 20 ; *Brown v. Orvis*, 6 How. Prac. Rep. 378 ; *Ware v. Clawnay*, 24 Ala. 707. Where the words affect one as merchant's clerk, special damage need not be averred. *Butler v. Howes*, 7 Cal. 87.

*W. B. Homer* for respondent.

( 1 ) A demurrer to a petition in a slander suit does not admit the truth of the innuendoes. Townshend on Slander and Libel [ 4 Ed. 1890] sec. 274, p. 495, also sec. 362, p. 607 ; *Fleishman v. Bennett*, 87 N. Y. 231 ; *Kennedy v. Publishing Co.*, 3 N. Y. 139 ; *Caldwell v. Reynolds*, 2 Abb. Pr. 193 ; *Frey v. Bennett*, 5 Sandford, 54 ; *Donaghue v. Gaffy*, 54 Conn. 266 ; *Bundy v. Hart*, 46 Mo. 460 ; *Curry v. Collins*, 37 Mo. 324 ; *Bretlan v. Anthony*, 103 Mass. 37. ( 2 ) The words themselves as averred are not actionable *per se*, and, if actionable at all, are not so without prefatory averments of extrinsic facts. The want of these averments cannot be supplied by the innuendoes, nor can the force or effect of the words be enlarged by the innuendoes beyond the previous averments. *Cristal v. Craig*, 80 Mo. 367 ; *Legg v. Dunleavy*, 80 Mo. 558 ; *Curry v. Collins*, 37 Mo. 324 ; *Church v. Bridyman*, 6 Mo. 190 ; *Dyer v. Morris*, 4 Mo. 214 ; *McManus v. Jackson*, 28 Mo. 56 ; *Snell v. Snow*, 13 Met. 278 ; *Bloss v. Tobey*, 2 Pick. 322 ; *Andrews v. Woodmansee*, 15 Wend. 232. ( 3 ) The meaning of the petition as related to the words alleged to be actionable is not intelligible, and, therefore, the demurrer to the petition was rightly sustained. *McCallum v. Lambie*, 145 Mass. 234 ; *Wing v. Wing*, 66 Maine, 62 ; *Bloss v. Tobey*, 2 Pick. 320. ( 4 ) Where the words uttered are not in themselves *per se* actionable the pleader is bound by the

meaning placed upon them by the innuendo, and cannot recover upon some other meaning. *Hudson v. Garner*, 22 Mo. 423; *Butler v. Wood*, 10 How. Pr. 222; *Day v. Robinson*, 1 A. & E. 554. (5) There is in the words averred no imputation whatever injurious to plaintiff's character. *Cristal v. Craig*, 80 Mo. 367; *Legg v. Dunleavy*, 80 Mo. 558; *Railroad v. McCurdy*, 114 Pa. St. 554; *Carter v. Andrews*, 16 Pick. (33 Mass.) 1; *Kintry v. Fife*, 29 Ala. 206; *Hart v. Coy*, 40 Ind. 553; *Snell v. Snow*, 13 Met. 278; *Bloss v. Tobey*, 2 Pick. 322; *Brettan v. Anthony*, 103 Mass. 37.

THOMAS, J.—This is an action of slander, and the petition is as follows: "The plaintiff states that, at the times herein stated, the defendant and one Alexander Russell were partners in the dry-goods business at the city of St. Louis, under the firm-name of D. Crawford & Co.; that at said times there was a usage and custom in the business of said firm to have their salesmen, including the plaintiff, who was at said times in the employment of said firm as a salesman, make sales of remnants of dry goods upon partial payments; that according to said usage and custom, when a sale of such remnant should be so made by a salesman upon partial payment, there should be placed upon the package of said remnant so sold, by the proprietors of said firm, or by their floor manager, a ticket on which was marked certain letters, which by the usage aforesaid indicated the price at which said package should be sold, as also the amount of the premium or reward which the salesman making such sale was entitled to receive for making such sale, after said remnant so sold had been fully paid for by the buyer, and not till then, as according to such usage and custom such salesman was not to receive any premium or compensation for making such sales unless the buyer should fully pay for the goods so sold; that, according to said usage and custom, the letters "cf" stood for and indicated the sum of seventy-five

cents, and the letters " pm " meant and indicated the word premium, which said usage and custom was well known to all the employes and proprietors of said firm. And according to said custom and usage, when a sale should be made of a remnant upon partial payment, a part payment was made in cash, and said remnant was kept by the delivery clerk until the buyer should fully pay for same, and thereupon said package should be delivered to buyer and thereupon the salesman became entitled to receive the premium for making said sale ; but, if the buyer did not fully pay for said goods within a reasonable time after such purchase, said remnant was to be returned to the stock of said firm, and there was no premium or compensation to be paid to the salesman for making such sale.  And the plaintiff states that on the twenty-sixth day of January, 1886, he, as such salesman for said firm, sold a remnant of black silk goods upon partial payment, according to said usage; that the buyer paid thereon the sum of $1, and said remnant, according to said usage and custom, was made into a package, marked as aforesaid, and sent to the delivery clerk of said firm to keep until such goods should be paid for in full, or returned to said stock of said firm for failure of the buyer to pay therefor ; that on the second day of April, 1886, the buyer of said remnant not having paid therefor, said remnant was, according to said usage and custom, returned to the stock of said firm ; and upon said day the defendant falsely and maliciously spoke of and concerning the plaintiff the following words in substance :  ' Powell, put cf on that goods or leave the house ; ' the plaintiff asked defendant, ' What do you mean ? '  Defendant then said, ' Do you put cf on that goods or leave the house ; ' plaintiff then said, ' If you will allow me to explain you will think differently.'  Defendant then said, ' I don't want any explanation ; you know you got that pm, you sold that goods just to get that pm; get your hat and get out of here ; ' that defendant used said

words to the plaintiff in the presence and hearing of G. W. Corwin, J. E. Seals and others, who heard and understood same; that, by said words so used by the defendant to the plaintiff, the defendant intended to charge and did charge the plaintiff with the crime of larceny of the sum of seventy-five cents, as such salesman for said firm ; that, by said words so spoken by defendant to the plaintiff, defendant charged and intended to charge the plaintiff with the crime of larceny in stealing and converting into his own use said sum of seventy-five cents, the property of said firm, against their will, and with intent to deprive said firm of said money, and with intent not to return same to its owner ; that said Corwin, Seals and others heard said words and understood them, and understood said defendant by said words to charge the plaintiff with the crime of larceny, as aforesaid ; that, by said false and slanderous words spoken by the defendant as aforesaid, the plaintiff was made to suffer great mental pain, was greatly damaged in his good name and fame, and was thereby greatly damaged in his business and business reputation; that thereby plaintiff lost his situation and was unable to procure employment as such salesman ; that prior to the publication of said false and slanderous words plaintiff had always borne an honorable name among all his associates, neighbors and the people of the state of Missouri and of the United States ; that by said false and slanderous words so spoken, plaintiff's reputation as an honest man was greatly injured, and plaintiff suffered great humiliation and disgrace thereby, to his damage in the sum of $10,000; that, by said false and slanderous words spoken as aforesaid, the plaintiff was greatly · damaged in his business and occupation as a salesman, was deprived of his employment, and thereby damaged in the sum of $15,000 ; wherefore, plaintiff prays judgment for the sum of $25,000, and for his costs."

The defendant at the trial objected to the introduction of any evidence, on the ground that the petition

does not state facts sufficient to constitute a cause of action. This objection being sustained, plaintiff took a nonsuit with leave, etc. The court refused to set aside this nonsuit and plaintiff appealed. We think the court committed no error in holding that the petition in this case failed to state a cause of action. The words charged to have been spoken of the plaintiff are not slanderous *per se*, and, to make them actionable, the *colloquium* must show they were used in a connection and sense to make them slanderous. Nor can this be shown by the innuendo. It is not the office of the innuendo to make averments. *Bundy v. Hart*, 46 Mo. 464 ; *Cristal v. Craig*, 80 Mo. 367.

Viewing the *colloquium* alone, therefore, we fail to discover that the plaintiff was charged with a crime or even a fraud. There is no averment that he received any money on the sale made by him ; indeed, the inference is that he did not receive any. Nor does it anywhere appear how the remnant of black silk goods, which plaintiff alleges he sold, was marked, nor how much it ought to have been or was sold for, nor how much he was to receive, or did receive, for making the sale. It is averred that the purchaser of this remnant paid $1 as a partial payment, and *then* the remnant was made into a package and marked "as aforesaid." But it is impossible for us to determine from the allegations of the petition, how this package was marked. We find it stated that the proprietors of the store, or the floor manager, placed upon packages to be sold tickets on which certain letters were marked, indicating the price at which the articles should be sold, and the amount of the premium or reward which the salesman was entitled to receive for making the sale, and that "cf" stood for and indicated the sum of seventy-five cents, and that "pm" meant and indicated the word premium, and that, "when a sale should be made of a remnant upon partial payment, a part payment was made in cash, and said remnant was kept by

the delivery clerk until the buyer should fully pay for same, and thereupon said package should be delivered to the buyer, and thereupon the salesman became entitled to receive the premium for making the sale; but, if the buyer did not fully pay for said goods within a reasonable time after such purchase, said remnant was to be returned to the stock of said firm, and there was no premium or compensation to be paid to the salesman for making such sale."

After making these allegations, the plaintiff avers that he sold the remnant, and it "was made into a package and marked as aforesaid." Who marked it "as aforesaid" is not stated. Construing the previous averments, we would say that the proprietors of the store or floor manager had marked this package, but we cannot say *how* it was marked. The proprietors of the store or floor manager had no doubt put letters on it indicating the price at which it should be sold, and the premium or reward the salesman selling it should receive, but what those letters were, is not disclosed; "pm" did not indicate the *amount* of the premium; it simply stood for the word premium. This package was evidently not marked "cf," for defendant demanded that plaintiff "put cf on that goods or leave the house," and besides that "cf" stood for seventy-five cents, and the package was sold for more than $1.

The *colloquium* fails, therefore, to show how this remnant was marked, or how much it was sold for, or ought to have been sold for, or how much premium plaintiff ought to have received for making the sale, or how much he did receive, or that he received anything, and it nowhere appears that plaintiff was required in the performance of his duty as defendant's salesman to mark the package, or that he did mark it, and we cannot see how the words defendant spoke of plaintiff can be construed into a charge of larceny of seventy-five cents, or any other sum, or of fraud, as defendant's agent. Defendant said of plaintiff, "You know you

got that pm." Well, according to the allegations of the petition was plaintiff not entitled to the " pm " for making the sale? "You sold that goods just to get that "pm." Why certainly he did. The "pm " was his reward, his compensation for his services in making the sale, and, viewing these words in the light of the previous statement of facts, we cannot perceive that they are slanderous ; indeed, they seem to be perfectly innocent. Of course, we may infer that defendant intended to make some kind of a charge against plaintiff involving a lack of duty, but what it is, we are utterly unable to determine from the petition before us. The petition ought to have set out the facts, necessary to show that, by the use of the words, defendant charged, and intended to charge, plaintiff with a crime, or some dereliction of duty which would constitute slander, and, having failed to do this, the judgment will be affirmed. All concur.