## WILLIAM S. WINSOR, Appellant, v. L. FRANK OTTOFY, Respondent.

**St. Louis Court of Appeals. Argued and Submitted April 30, 1909. Opinion filed June 22, 1909.**

1. **LIBEL: Per Se: Facts Stated.** A letter from one corporate stockholder to another, claimed to be libelous, stated that the writer desired the co-operation of stockholders in proceedings for a receiver, and that he believed from the facts in his possession in no other way would the stockholders ever realize a dollar on their investment; that he had thus far unavailingly endeavored to secure an inspection of the books and accounts; that shortly before he was permitted to inspect the insufficiently kept records, containing minutes of meetings and the stock book showing that plaintiff and his wife were the owners of a large majority of the shares; that, if the stock was fully paid, as it was represented to be, it would mean that plaintiff and his wife and the other stockholders should have paid in a large sum specified, but that he found from the records that a loan was secured on all the corporate property; and that he was informed that it was all now used by plaintiff as his country home. *Held*, that the letter was not libelous *per se*.

2. ———: Innuendo: Inference not Warranted. The petition alleged by way of innuendo, that by the language contained in said letter defendant intended to charge plaintiff with misrepresenting that the stock of said corporation was fully paid; and that plaintiff and other stockholders should have, but had not, paid various sums on their stock, and that a loan had been secured on all the property of the corporation, "thereby intending to charge plaintiff with fraudulently misappropriating the funds and fraudulently mismanaging the affairs of said corporation;" and that by the language contained in said letter, defendant intended to charge plaintiff with using the property of said corporation as his country home and that such use was detrimental to the interests of the stockholders of said corporation. *Held*, that the inference sought to be drawn by innuendo from the language of said letter was not warranted.

3. PLEADING: Libel: Innuendo: Colloquium Necessary, When. In an action for libel where the language of the publication is not libelous *per se*, the use of the innuendo alone in the petition is not sufficient, but it must also contain a colloquium which shows that the language used was employed in such connection and sense as to make it libelous.

4. ———: ———: ———: ———: Petition Held Insufficient. The petition contained no averment showing the relation or dealing of either plaintiff or defendant with the business of the corporation that would render the matter written an accusation of dishonesty, nor that said matter should be construed in an offensive or libelous way or was intended to be so construed, and said matter not being libelous *per se*, the petition utterly failed to state a cause of action.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

AFFIRMED.

*O'Neil Ryan* and *Wm. H. Clopton* for appellant.

(1) The petition stated a cause of action, and the court under proper instructions should have submitted the case to the jury. Julian v. Kansas City Star, 209 Mo. 35; McGinnis v. Knapp, 109 Mo. 131; Ukman v. Daily Record, 189 Mo. 391; Sullivan v. Commission Co., 152 Mo. 275; Meriwether v. Knapp, 120 Mo. App. 354; Same v. Same, 211 Mo. 207; Brown v.

Publishers, Geo. Knapp & Co., 112 S. W. 474; Brown v. Globe Printing Co., 112 S. W. 462; Julian v. Kansas City Star, 209 Mo. 78.

*Rassieur, Schnurmacher & Rassieur* for respondent; *L. Frank Ottofy, pro se.*

(1) The petition did not state a cause of action and the ruling of the court sustaining defendant's objection to the introduction of any evidence on that ground was proper. The language of the letter is not libelout *per se,* and, to make it actionable, the colloquium must show it was used in connection and sense to make it libelous, nor can this be shown by the innuendo. It is not the office of the innuendo to make averments. Church v. Bridgman, 6 Mo. 190; Wood v. Hilbish, 23 Mo. App. 389; Boyce v. Aubuchon, 34 Mo. App. 315; Christal v. Craig, 80 Mo. 367; Legg v. Dunleavy, 80 Mo. 558; Powell v. Crawford, 107 Mo. 595; Ukman v. Daily Record Co., 189 Mo. 378.

STATEMENT.—The petition on which this case went to trial is as follows:

"For amended petition, plaintiff alleges that he is and at the times hereinafter mentioned was a resident and a citizen of the City of St. Louis, State of Missouri, and by occupation a builder and plumber, enjoying the confidence, esteem, and patronage of many people in said city. That at said times he was a stockholder in and was president of the Homestead Orchard Company, a corporation organized under the laws of Missouri for the following purposes: To buy, plant, cultivate, own, conduct and sell orchards and gardens, and to deal in all descriptions of fruit and fruit products in the State of Missouri and own any and all property which may be necessary and incident to the conduct of said business.

"That there were at said times twelve or more holders of shares of stock in said company other than plaintiff and the members of his family, owning from one to

one hundred shares of stock. That the defendant is and was at said times an attorney at law engaged in the practice of law in the City of St. Louis, State of Missouri.

"That on the 5th day of September, 1905, defendant maliciously published of and concerning plaintiff the following letter:

" '302 Laclede Building.

" 'St. Louis, Mo., Sept. 5, 1906.

" 'James P. Mayo, Esq.,

" '4026 N. 9th St., City.

" 'Dear Sir: You appear as the record owner of (5) shares of the capital stock of the Homestead Orchard Co., wherein I also am a stockholder. I desire to secure the co-operation of the stockholders in the institution of legal proceedings having in view the appointment of a receiver for the corporation, as I believe from the facts in my possession that in no other way will the stockholders ever realize one dollar upon their investment.

" 'Since July 19th I have been endeavoring to secure an inspection of the books and accounts but thus far unavailingly.

" 'On August 1st, I was permitted to inspect insufficiently kept records containing minutes of meetings and the stock book. These records show that Wm. S. Winsor and his wife are the owners of 3310 shares, whereas all the other stockholders are only shown to have 295 shares of stock. If the stock was what it was represented to be, viz.: full paid, this would mean that Wm. S. Winsor and wife should have paid in $33,100 and the other stockholders $2,950, a total of $36,050. The fact however as I find it from these records is, that on February 5th, 1906, a loan of $2,000 was secured on all property of the corporation and I am informed that all its property is now used by the president as his country home. I shall be pleased to have you sig-

nify your intention to join with the other stockholders who have agreed to take legal steps and shall take pleasure in giving you all the information in my possession.

   " 'A similar letter has been sent to all the stockholders.

" 'Very truly,
   " 'L. FRANK OTTOFY.'

"The said letter was signed by the defendant and caused to be delivered by him to all the stockholders of the said Homestead Orchard Company.

"That in and by the language contained in said letter defendant intended to charge and did charge the plaintiff with dishonestly misappropriating the funds of said Orchard Company and the persons to whom defendant caused said letters to be delivered understood said letter to charge the plaintiff with misappropriat-, ing the funds of said corporation.

"That in and by the language contained in said letter defendant intended to charge the plaintiff with misrepresenting that the stock of said corporation was fully paid stock and that plaintiff and his wife should have paid in the sum of $33,100 and other stockholders the sum of $2,950 which they had not done, but that on the 5th day of February, 1906, a loan of $2,000 was secured on all property of the corporation; thereby intending to charge plaintiff with fraudulently misappropriating the funds of said corporation and fraudulently mismanaging the affairs of said corporation.

"Plaintiff says the persons to whom said defendant caused said letters to be delivered understood said letter to charge that plaintiff had misrepresented that said stock was fully paid up when in truth and in fact said stock was not fully paid up and that plaintiff had fraudulently misappropriated the assets of said corporation.

"That in and by the language contained in said

letter defendant intended to charge the plaintiff with using the property of the corporation as his country home and that such use was detrimental to the interests of the stockholders of the said company and the persons to whom defendant caused said letters to be delivered understood said letter to charge plaintiff with improper use of said property.

"Plaintiff says that the contents of said letter are libelous, that the same were and are false and the same were and are malicious and were intended to defame and injure plaintiff in his character and reputation in the community in which he resides and does business.

"That plaintiff has and always has depended largely on his good reputation and credit as a builder and plumber.

"Plaintiff says that by reason of the libels aforesaid he has been harassed and vexed by inquiries made by said stockholders, and that by reason of said libel a suit was instituted against plaintiff by one of the stockholders of said Homestead Orchard Company on the 12th day of October, 1906, charging this plaintiff with fraudulent misrepresentations in the sale of one hundred shares of stock in said Homestead Orchard Company, and that the defendant in this case, L. Frank Ottofy, is attorney for the plaintiff in said suit.

"Plaintiff says that he has been actually damaged by the said libel in the sum of five hundred (500) dollars for which he prays judgment.

"And that by reason of the false and malicious libel he has been further damaged in the sum of three thousand (3,000) dollars for which he prays judgment against defendant as punitive and exemplary damages and for his costs."

The answer of defendant admits writing the letter set out in the petition, and that he wrote and transmitted to other stockholders of the Homestead Orchard Company a similar letter. It denies every other allegation in the petition; avers defendant was holder and

owner of five shares of the capital stock of the Homestead Orchard Company and as such was interested in the affairs of the company; that he wrote the letter by reason of being a stockholder and by reason of his interest as a stockholder, and that the statements made in the letter were made honestly and in good faith and were sent out to persons who were stockholders in the company, "and to whom he believed in good faith and in sincerity that he owed the duty of advising them of the facts set forth in said letter; and that said communications were privileged."

A general denial was filed in reply.

A jury being duly empanelled, and plaintiff sworn as a witness, defendant objected to the introduction of any evidence on the ground that the petition does not state facts sufficient to state a cause of action. The objection was sustained, whereupon plaintiff took a nonsuit with leave to move to set the same aside. This motion being filed and overruled, plaintiff excepting, judgment went for defendant, from which judgment plaintiff prayed an appeal to this court, which was granted, a supersedeas bond being filed and approved.

REYNOLDS, P. J. (after stating the facts).— There is a dispute between counsel as to whether or not the abstract or even the transcript shows proper filing of the bill of exceptions; various objections are also made to the abstract submitted by plaintiff's counsel and we are asked to affirm or dismiss for failure to comply with the rules of the court. We dislike very much to dispose of cases on this character of objections unless compelled to do so, not in any manner criticising counsel for making them; and while it must be admitted that the abstract is exceedingly defective and in many respects entirely insufficient, we have concluded to dispose of the case on the question of the sufficiency of the petition.

On a careful consideration of the petition and of the authorities cited, we hold that it is fatally defective. The language of the letter set out is not libelous *per se,* and in such case, use of the innuendo alone is not sufficient; a colloquium must show that the language used was used in such connection and in such sense as to make the language libelous. The inference sought to be drawn from the language used in the letter, by innuendo, is not warranted by that language. There is. nothing alleged in the petition to extend the meaning of the words which sufficiently show that, from the words used, and the connection in which they were used, they can be held to be libelous.

Among other cases cited by the learned counsel for plaintiff, in support of the petition, is the case of Ukman v. Daily Record Company, 189 Mo. 378, counsel citing page 391. That case does not sustain counsel. The Supreme Court there distinctly held that the matter contained in the publication itself was not libelous and that the meaning sought to be put upon it by the innuendo was not warranted by the language used. Nor do the cases of Julian v. Kansas City Star Co., 209 Mo. 35; McGinnis v. Geo. Knapp & Co., 109 Mo. 131; Sullivan v. Com. Co., 152 Mo. 268; Meriwether v. Knapp & Co., 120 Mo. App. 354, s. c. 211 Mo. 199; Brown v. Publishers: Geo. Knapp & Co., 213 Mo. 655; Brown v. Globe Printing Co., 213 Mo. 611, sustain the contention of plaintiff.

In the Julian Case, the Supreme Court sustained the petition because it was set out therein that plaintiff was a member of the General Assembly and that applying to him the words that "he did well while such member," could only be held to impute that he had used his public office corruptly. Here the expression "did well," is helped out, not by the innuendo, but by the averment of the capacity in which the plaintiff was acting at the time that he was said to have done the acts referred to as libelous, that is, he was then in a

public office. Practically the same principle, was implied in the McGinnis Case. In the Sullivan Case the language itself was held libelous.

In the Meriwether Case, 120 Mo. App. 354, the defense was justification and the libelous nature of the publication was therefore admitted. In Meriwether v. Knapp & Co., 211 Mo. 199, the case was reversed on account of an erroneous instruction.

In Brown v. Knapp & Co., and Brown v. Globe Printing Company, *supra,* the charge made was the charge of perjury, the charge actionable *per se,.* and the defense in those cases was privilege. The court, however, in each case held the publication itself was unfair and interspersed with the comments outside of the pleading which was published, and it held that the defense of privilege could not be extended to these outside comments.

It might be sufficient to base our action in this case upon the decision of the Supreme Court in the Ukman Case, *supra.* Further support of the rule there announced is, however, afforded by an examination of the cases of Church v. Bridgman & Wife, 6 Mo. 190; Wood v. Hilbish, 23 Mo. App. 389; Boyce v. Aubuchon, 34 Mo. App. 315, and especially the case of Christal v. Craig, 80 Mo. 367, in which latter case it is held by the court that the innuendo in slander or libel is not an averment of any fact and cannot be used as a substitute for an averment; it is a mere conclusion, explanatory in its nature only, and that the question must always occur as to whether the innuendo set out is the legitimate deduction from the facts stated. Powell v. Crawford, 107 Mo. 595, is to the same effect. The court there held that the words charged to have been spoken of the plaintiff are not slanderous *per se* and to make them actionable, the colloquium must show they were used in such nature and sense as to make them slanderous. This cannot be done by the innuendo alone. When this test is applied to the petition at bar, the

petition utterly fails to state a cause of action. Nothing whatever is averred to show the relation or dealing of either the plaintiff or the defendant with the business of the corporation, concerning whose affairs the letter is written and to whose stockholders it is addressed that renders the matter written an accusation of dishonesty. There are no averments of any facts which show why assertions contained in the letter should be construed in an offensive and libelous way or to show that they were intended to be so used. The averment in the petition, that the defendant was an attorney at law and was the attorney of a party who had instituted suit against plaintiff is absolutely and entirely outside of the case.

The judgment of the circuit court in directing a verdict for defendant and in refusing to set aside the nonsuit and grant a new trial is correct and is approved. All concur.