ALEX A. SWEAAS v. MARTIN V. EVENSON.[1]

March 11, 1910.

Nos. 16,421—(193).

*Slander — Natural and Special Meaning of Words.*

During the contest for the removal of a county seat, defendant said of plaintiff, then a candidate for the office of auditor of the county, that he had sold out to one of the contesting places and had "pledged himself to support them in the county seat matter if elected; do not vote for him;" and other similar matters. It is *held:*

To determine whether a given statement is defamatory or not, it must

[1]Reported in 125 N. W. 272.

---

[Note] Libel in charging public official with acceptance of bribe, see note to Atlanta News Pub. Co. v. Medlock (Ga.). 3 L.R.A.(N.S.) 1139.

be construed in the ordinary and natural meaning of the words used, without technical interpretation. If not defamatory in such meaning, it must then be construed with reference to its special meaning, if in any such sense it was understood by the persons to whom it was published. The words here spoken, in the sense in which they were shown to have been actually understood, did not charge a violation of section 361 or of section 4800, R. L. 1905, defining and punishing bribery at and before elections, or of section 4867, R. L. 1905, punishing conspiracy for the perversion or obstruction of public justice in the due administration of the laws. They were not actionable.

Action in the district court for Red Lake county to recover $10,000 for slander.

[The complaint of plaintiff and respondent alleged: In the course of a contest for the removal of the county seat from the city of Red Lake Falls to the city of Thief River Falls, during which a spirit of bitter feeling and rivalry existed, it was incumbent upon the county auditor to perform certain duties by law prescribed, in the performance of which he could and did exercise certain discretion. Plaintiff had been nominated for the office of auditor. Defendant was a leading and active member of the county seat committee of Thief River Falls, which had charge of the proceedings leading to the removal of the county seat. Defendant maliciously spoke in the presence and hearing of others of the plaintiff these false words: "Sweaas (meaning and intending this plaintiff) is unreliable for the auditor's office (meaning and intending the office of county auditor of Red Lake county), as he (meaning plaintiff) has sold out to Red Lake Falls (meaning and intending certain people in Red Lake Falls), and has pledged himself (meaning plaintiff) to support them (meaning certain people in Red Lake Falls) in the county seat matter (meaning the proceedings for the removal of the county seat) if elected. Do not vote for him (meaning plaintiff)." The plaintiff also spoke certain other words of the same tenor, which were similarly objectionable. On issues joined, the case was tried] before Watts, J., and [a jury, which awarded plaintiff $500. This appeal was taken from the court's denial of the defendant's motion for judgment notwithstanding the verdict and for a new trial.] Reversed.

110 M.—20

*G. Halvorson, Thomas Germo,* and *A. A. Miller,* for appellant. *Charles E. Boughton* and *F. A. Grady,* for respondent.

JAGGARD, J. (after stating the facts within [ ] as above).

A number of errors have been assigned by defendant, which in the view here to be taken are not material. The gist of the case is whether the words spoken under the pleadings and proof were slanderous. Plaintiff's contention is that: "If the slanderous words, spoken as complained of, meant anything at all, they meant that the plaintiff had agreed or promised with and to certain persons and voters of Red Lake Falls  *  *  *  that in return for their votes for him at such election he would, if elected auditor, do some act or acts of value to them  *  *  *  relative to the county seat removal fight.  *  *  *  If appellant [defendant] conveyed such meaning, then he charged the respondent [plaintiff] with an indictable crime, described in section 361 of the Revised Laws of Minnesota for the year 1905; but the words complained of carry even a deeper meaning, charging a conspiracy punishable under subdivision 6 of section 4867 of said Revised Laws, and also under section 4800."

It is elementary that, in order to determine whether a given statement is defamatory or not, it must be construed in the ordinary and natural meaning of the words used, without technical interpretation. If not defamatory in such meaning, it must then be construed with reference to the special meaning, if in any such sense it was understood by the persons to whom it was published.

Section 361, R. L. 1905, punishes bribery before or at elections. Section 4800 also provides punishment for asking or receiving bribes. No bribery was charged by the words plaintiff was alleged to have used. The candidate, according to the complaint, promised that plaintiff would in return, if elected, favor Red Lake Falls so far as possible in preventing the removal of the county seat. In other words, in the language of one of the witnesses upon whom plaintiff relies: "What I believed was that he had made arrangements with Red Lake Falls people that they were to support him on election, and if he was elected he was going to favor them in their side of the county seat fight as far as he could." Such a declaration was natural

to the Red Lake Falls candidate, and cannot reasonably be construed into being the charge of corrupt bribery.

Section 4867, R. L. 1905, defines conspiracy and its punishment. The sixth subdivision provides, inter alia, that a person shall be guilty of a misdemeanor who conspires to commit any act injurious to the public health, public morals, trade, or commerce, or for the perversion or obstruction of public justice or the due administration of the laws. If it be conceded that to charge a man with misdemeanor, as distinguished from a crime, is actionable as defamatory, we are at a loss to see how the language used made that charge. What was understood was, in the language of one of the witnesses to which plaintiff refers us: "That Sweaas had made some promise or agreement with the people of Red Lake Falls in this county seat matter, and that we couldn't depend upon him for Thief River Falls to favor our side." This was the natural construction of the language. What defendant said was substantially so understood by another of plaintiff's witnesses, who concluded that all plaintiff meant was this: "Well, that he would be on the side of Red Lake Falls against the moving. Q. In the county seat fight? A. That is what I took it of course." He did not understand that plaintiff had received any money from Red Lake Falls, but simply "in the county seat scrap that he would be on their side." Another witness said he understood that the words meant that plaintiff "was with Red Lake Falls in the county seat fight, and that they were going to do some crooked work * * * if he got the office." Inferentially plaintiff was to be connected with the crooked work. It would be an unnatural and strained construction of what plaintiff said to hold it to mean that this crooked work consisted of a perversion or obstruction of public justice or the due administration of the laws.

It follows that the words which defendant is charged to have used are not actionable in the light of the proof as to the meaning in which they were understood. Defendant is entitled to judgment notwithstanding the verdict, and it is so ordered.

Reversed.