Patterson v. Evans.

## MARY E. S. PATTERSON, Respondent, v. SAMUEL L. EVANS, Appellant.

### Kansas City Court of Appeals, February 13, 1911.

1. **LIBEL: Pleading: Meaning of Charge: Instructions.** Where the charge in the petition for libel is that defendant published of a boarding-house keeper that she was "delinquent" and that by such publication it was meant that she was not worthy of credit and was on the black list, it was held that the plaintiff is bound by the meaning attached to the words by the petition and therefore to be error to include in an instruction the issue whether, plaintiff was dishonest.

2. **LIBEL PER SE: Commercial Journal: Credit.** It is libel *per se* to publish in a commercial credit journal, of a boarding-house keeper that she is "delinquent," or is "unworthy of credit."

3. ———: ———: ———: **Damages, General and Special.** In libel *per se*, special damages need not be alleged, as general damages will be presumed, and need not be proved, though they may be.

4. ———: ———: ———: **Cross-Examination: Credit.** Where the plaintiff in an action for libel testified to her loss of credit, it was wrong to exclude cross-examination whether her credit existed at the places she stated, only by reason of her securing the purchase by chattel mortgage.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas,* Judge.

REVERSED AND REMANDED.

*Holmes, Holmes & Page* and *M. J. Kilroy* for appellant.

*Lyon & Lyon* for respondent

ELLISON, J.—Plaintiff's action is for libel. She recovered judgment in the circuit court for five hundred dollars actual and one thousand dollars punitive damages.

It appears from the allegations of the petition that plaintiff purchased of defendant a ton of coal which

proved to be worthless for fuel; that she informed defendant of that fact and he refused to allow her to return it, whereupon she notified him that she would not accept the coal and that it was subject to his order, and refused to pay for it. That defendant, after informing plaintiff that he would do so, had her name published in a paper, called "Edgar Merchants Exchange," established and carried on for the purpose of publishing the names of delinquent debtors. · The charge is then made in the petition in the following words: "That said Edgar Merchants Exchange was and is a journal published in Iola, Kansas, and in common circulation among the business men in Kansas City, Missouri, and Kansas and all over the country, which journal contains the names of delinquent debtors with the name of the person or firm reporting same, and to report and cause a name to be printed in the delinquent list of said journal means that the person so appearing in said delinquent list is unworthy of credit and such list is commonly known in the business community as the black-list; that the said Edgar Merchants Exchange has printed in it the following: 'Bradstreet and Dun is the Wholesalers' Bureau of Information, Edgar Merchants Exchange is the Retailers' Bureau of Information.' You are, no doubt, aware that the Merchants Exchange is published and revised monthly showing all delinquent debtors in 140 different towns in Kansas, Missouri and the State of Oklahoma, and goes into the hands of over 4000 merchants and doctors monthly.' That the said Edgar Merchants Exchange has also printed on the first page the following instructions above the names of the towns, creditors and debtors: 'Instructions. The number shown before the name is the town number. The number shown between the first and last name is the month in the year the delinquent was listed. The number shown after the name is the merchant's

number. Send out all notices to be due to list in from 10 to 15 days.' "

"That the said defendant, who is a subscriber to the Edgar Merchants Exchange, and whose name appears on page 21 of the 1908 May publication, maliciously, wantonly and wrongfully, without cause and for the sole purpose of injuring plaintiff's credit and humiliating her and unlawfully forcing her to pay him said unjust claim for said coal and knowing the same to be false, caused to be published of the plaintiff in the 1908 May number of the Edgar Merchants Exchange, on page 25, the following: '82 Patterson 9 Mrs. 3129 Bell K. C. Mo. 2552.' That the number 82, according to the rules of the publication, meant Kansas City, Mo., and the number 2522, according to the rules of the publication, referred to the said defendant whose name appeared opposite that number on page 21 as the subscriber who caused the name of the plaintiff to be published. That the said defendant also caused the plaintiff's name to be put in various numbers prior to the May number, 1908, and in various numbers since up to the filing of this suit."

At the trial two instructions were given to which defendant excepted. They submitted as one of the issues in the case, whether plaintiff was dishonest, and whether those reading the paper and finding plaintiff's name in the "delinquent list," would understand that such list "was composed of persons that were dishonest and unworthy of credit." Defendant objected to these instructions on the ground that they introduced the element of dishonesty of plaintiff when that had not been charged as a part of the matter composing the libel, nor had that meaning been ascribed to it.

We think the objection well taken. The petition charges that plaintiff's name was published in the "delinquent list," and that to "cause a name to be printed in the delinquent list of said journal means that the person so appearing in said delinquent list is unworthy

of credit, and such list is commonly known in the business community as the black-list." When the printed language which is charged to be libelous is such that it may have different meanings, or is ambiguous, the meaning ascribed to it by the pleading will bind the pleader. Such statement of meaning is a notification to the defendant of what he is charged with and what he must prepare himself to defend. It would violate all rules of pleading, not to say common fairness, to allow the meaning ascribed to the words by the plaintiff himself, to be suddenly changed by the submission of another totally different meaning, so different as to amount to a distinct and independent charge. [Smid v. Bernard, 63 N. Y. Supp. 278; Westbrook v. N. Y. Sun, 65 N. Y. Supp. 399; Wuest v. Brooklyn Citizen, 76 N. Y. Supp. 706.] "He (plaintiff) will not be allowed in the middle of the trial to start a fresh innuendo not in the pleadings; he must abide by the construction put on the words in his statement, or else rely on their natural and obvious import. He cannot during the trial set up a third construction of the words different both from prima facie meaning and from that pointed out by the innuendo." [Newell on Slander and Libel, 629; Odgers, Libel and Slander, 102.]

To charge one with being "delinquent" or with being "on the black list" or with being "unworthy of credit," does not imply dishonesty. A man might, by some accident, or misfortune, or mismanagement, become delinquent in payment or unworthy of credit, and thus find his way to a creditors' "black-list," and yet be scrupulously honest. It was a harmful error against defendant to have the latter element put into the case.

The question is placed before us, whether it is a libel *per se* to publish in a commercial credit paper that a boarding-house keeper (giving name), is delinquent; or is unworthy of credit. We have concluded that it is. The law, recognizing the harmful results to business flowing from a bad name or reputation of the proprietor

concerning such business has always guarded the good repute of the innocent tradesman. So a publication as to one's business will be held to be libelous *per se* which would not be when applied to the individual. Thus, printing that "The opinion is expressed that a local bank has been secured" by the plaintiff who was a merchant, was held to be a libel *per se*. [Minter v. Bradstreet Co., 174 Mo. 444.] So the same was held as to printing that certain merchants "have assigned." [Mitchell v. Bradstreet Co., 116 Mo. 226.] And in this court it was held to be libelous *per se* to print that "Joseph Hermann, brickmaker, is in the hands of the sheriff." [Hermann v. Bradstreet Co., 19 Mo. App. 227.]

Something was stated in argument tending to disparage an action for libel which affects a business said to be so inconsequential as a boarding-house keeper. But it must be borne in mind that the law is not so restricted in its terms and meanings as only to include the ordinary mercantile pursuits. It is familiar learning in the law of libel that it includes the professional man, tradesman and artist. And it is said by the Supreme Court of Michigan (Weiss v. Whittemore, 28 Mich. 366) and by Townsend on Slander and Libel, quoted approvingly by our Supreme Court in Minter v. Bradstreet Co., supra, to include a "trade" or "employment." And Hermann v. Bradstreet, supra, involved the libel of a brickmaker. We therefore can see no reason why the law may not be applied to a boarding-house keeper. In this case the damage is claimed to have resulted to plaintiff from a loss of credit, and it is suggested that credit is not necessary to such business. Ordinarily credit is a necessity or convenience to any business which requires purchases, whether it be large or small. At least it is a right which accompanies a good business reputation and it should receive the protection of the law.

There was no special damages alleged. But, as the publication is libelous *per se,* none need be alleged and general damages may be proven. [Herman v. Brad-

street Co., supra.]   In proving general damages plaintiff gave testimony as to her credit in certain mercantile establishments, and the loss of it.   Defendant then, in cross-examination, undertook to show by her that she. did not have credit in some of these, by showing that she was required to give chattel mortgages to secure purchases of furniture.   This the court disallowed, and we think the ruling was error.   It was cross-examination on the very subject she testified in chief and tended to explain, or qualify, or contradict, what she had stated as to her credit.

The position of the plaintiff concerning the application of the words published, is not sufficiently definite. If it is intended that her claim of damage is to be based upon the fact that she was engaged in a business in which credit was an element of value, she should distinctly plead at the time of the publication she was engaged in the business of a boarding-house keeper

The judgment is reversed and the cause remanded. All concur.