## HENRY M. WALSH, Appellant, v. PULITZER PUBLISHING COMPANY.

### Division Two, May 20, 1913.

1. **LIBEL: Words When Libelous.** Words to be actionable should be unequivocally so. The libelous language published is to be given its ordinary import and meaning, unless an explanation accompanies the words which gives them a different meaning, or unless all the hearers understand that they refer to a transaction which cannot constitute the crime which the words imply.

2. ———: **Innuendo: Colloquium.** A court will not in support of a pleading in a libel suit infer a criminal intention when the pleader has not directly averred its existence. Even under our statute, all the averments necessary to a common law pleading to show the meaning of the words must still be made. Where the words are not libelous *per se*, the use of the innuendo in a petition based thereon is not sufficient, but there must be a colloquium to show they were used in such connection and in such sense as to make them libelous.

3. ———: ———: ———: **No Cause of Action Stated.** The publication concerning a candidate for circuit attorney that "the mere candidacy of such a person as Walsh for such an office should fill the city with alarm. He has no qualifications for the place. His sponsors and his associates are survivors of the

most degraded regime that St. Louis ever knew. He can have no proper motive in aspiring to the place," is not libelous *per se*, and in order to make them libelous it was necessary to state extrinsic facts to bring out the defamatory meaning, and that not having been done the petition does not state a cause of action.

4. ——: **Unfit for Office: Sting Removed.** Any sting in the statement that "the mere candidacy of such a person as Walsh for such an office should fill the city with alarm" was removed by the statement which immediately follows, that "he has no qualifications for the place," thereby freeing the publication from any reflection upon his personal or professional character, and confining the criticism to his fitness for the place sought, which is permissible to a newspaper.

5. ——: **Degrading Associations: No Crime Imputed.** A publication of a candidate for office that "his sponsors and his associates are survivors of the most degraded regime that St. Louis ever knew. He can have no proper motive in aspiring to the place" does not use words that are libelous in themselves. They do not impute a crime; and to have rendered them libelous it was necessary for the petition to state, in addition thereto, facts pointing to the crime imputed, if one was imputed.

6. ——: **Candidate for Office: Newspaper Right.** While a candidate for a public office is not to be subjected to a discussion in the public press of his reputation or character at the expense of truth, for a lie is never privileged, it is the right and duty of a newspaper to discuss his fitness for the place he seeks, in such a manner as to present the full facts to the electors, either by contrast or comparison with other candidates, or by an analysis of his individual qualifications.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*Henry M. Walsh pro se.*

(1) With regard to the possible effect of the words printed and the language used and their effect in the community it has been held that language used affecting a person, particularly in his business or profession are actionable without special damage proven. Coal Co. v. Rose, 2 L. R. A. (N. S.) 743; Minter v.

Bradstreet, 174 Mo. 44; Baldwin v. Walser, 41 Mo. App. 243; Johnson v. Dispatch Co., 2 Mo. App. 565. (2) If the statement of the defendant is true that plaintiff "sought this office for no good purpose," the article or editorial charges are defamatory and libelous. R. S. 1899, sec. 2259; R. S. 1909, sec. 4818. (3) Does this article charge plainly and openly the corruption of the plaintiff? Does this article attempt to "deprive" the plaintiff "of the benefits of public confidence?" Does it in plain language intended to be understood by the merest child, tend to "provoke" the plaintiff "to wrath or to expose him to public hatred, contempt, or ridicule?" If this article does not do any and all of the things which are stated as statutory libel in this State, then the English language has no meaning. The editorial in question had no object other than to expose the plaintiff to public hatred and to deprive him of public confidence; the language: "The mere candidacy of such a person as Walsh for such an office should fill the city with alarm," is a call to the pubic to destroy the confidence of the public in Walsh, it is intended to hold Walsh up to public hatred and contempt, it charges that he seeks this office, which if "improperly or corruptly administered, it is the law asleep or perverted, with no proper motive." The editorial charges in plain language that the plaintiff is corrupt and seeks to commit crime. The language and charges of the editorial if true are sufficient to cause the disbarment of the plaintiff. Yeager v. Bruce, 116 Mo. App. 473; Smith v. Burrus, 106 Mo. 94; Brown v. Bruce, 59 Mich. 467; Sweeny v. Baker, 13 W. Va. 183; Reank v. Wilcox, 81 Ill. 70.

*Judson, Green & Henry* for respondent.

(1) It is not libelous *per se* to impute evil motives, or even an intention to commit a crime to any person. Evil thoughts are not criminal. Townsend

on Libel, sec. 162; Hogg v. Dorrah, 2 Port. 213; Green-wood v. Colby, 26 Neb. 449; Fanning v. Chace, 13 L. R. A. 134; Mitchell v. Sharon, 59 Fed. 980; Sillors v. Collier, 151 Mass. 50; Duffy v. Evening Post, 96 N. Y. Supp. 629. (2) Therefore, *a fortiori* it is not an actionable libel freely to discuss the motives, as well as the supposed fitness and mental and moral qualifications of a candidate for public office. Deiner v. Star-Chronicle, 232 Mo. 417; Branch v. Knapp & Co., 222 Mo. 580; Cook v. Pub. Co., 241 Mo. 326; U. S. v. Smith, 173 Fed. 240; Sweeny v. Baker, 13 W. Va. 184; Gott v. Pulsifer, 122 Mass. 235; Duffy v. Evening Post, 96 N. Y. Supp. 629; Yeager v. Bruce, 116 Mo. App. 473; Sillors v. Collier, 151 Mass. 50; Belknap v. Baily, 11 L. R. A. 74; Sherwood v. Harison, 8 L. R. C. P. 9; Miner v. Detroit Post, 49 Mich. 358; Howarth v. Barlow, 113 App. Div. (N. Y.) 258; 18 Am. & Eng. Ency. Law, 1042; 25 Cyc. 404. (3) The petition herein contains no innuendo, no colloquium and no allegations of special damage. Therefore, not being libelous *per se* the demurrer was properly sustained. Deiner v. Star-Chronicle, 232 Mo. 417; Duffy v. Evening Post, 96 N. Y. Supp. 629; Branch v. Knapp & Co., 222 Mo. 580; Ukman v. Daily Record, 189 Mo. 390; Mitchell v. Sharon, 59 Fed. 980; Fanning v. Chace, 13 L. R. A. 134. (4) It is no crime for anyone to associate with bad men or even with criminals, and a city ordinance prohibiting such association is unconstitutional. City v. Roche, 128 Mo. 548; Ex parte Smith, 135 Mo. 226. Therefore, it cannot be libelous *per se* to say that one's associates and his political supports are members of a "gang" or that they are survivors of a "degraded regime."

WALKER, J.—This is a suit for libel brought by plaintiff against defendant to recover damages for a certain publication made by the latter in its newspa-

per, the St. Louis Post-Dispatch, while the former was a candidate for the nomination for the office of circuit attorney of the city of St. Louis.

The defendant filed a demurrer on the ground that the petition did not state facts sufficient to constitute a cause of action, which was sustained, and the plaintiff, after formal exceptions and the usual procedure, appealed to this court.

The petition, the sufficiency of which is the sole question here, is as follows:

"Plaintiff states that he is a resident of the city and State aforesaid, a member of the St. Louis bar, admitted to practice law in the State of Missouri; that the defendant is a corporation, operating under the laws of the State of Missouri, in the city of St. Louis; that under and by virtue of said laws, the said defendant is engaged in the publication of a certain daily newspaper in said city and State; that said daily newspaper is known and published as the 'St. Louis Post-Dispatch.'

"Plaintiff for his first amended cause of action, leave of court first having been obtained, states, that on the 22nd day of July, 1908, the defendant, being then and there the owner and publisher of the said daily newspaper aforesaid, did publish in said paper aforesaid, the following false and defamatory libel of and concerning the plaintiff, to-wit:

"'CONNETT FOR CIRCUIT ATTORNEY.

"'Of more direct importance to the people of St. Louis than the presidency is the office of the circuit attorney. Good men, bad men and indifferent men have held it. The results in each case are familiar.

"'It is an office which in the possession of a good man, vitalizes law for the restraint and punishment of wrong-doers of every degree. In such hands, it protects the people from the rapacity of wealth and

power and from betrayal by the corrupt as well as from the vulgar crimes of the violent and the dishonest. It is a mighty engine of publicity and so, in many ways, it operates as a check upon oppression. Properly administered, it is the law in action. Improperly or corruptly administered, it is the law asleep or perverted.

"'Four men are to figure conspicuously at the Democratic primaries as candidates for this office—William C. Connett, Campbell Cummings, Carl Otto and Henry M. Walsh. Those who are acquainted with the habits and propensities of the gangs, old and new, will need no warning that if well disposed Democrats divide their votes among Connett, Cummings and Otto there is extreme danger that Walsh, a man manifestly unfit, will receive the nomination.

"'The mere candidacy of such a person as Walsh for such an office should fill the city with alarm. He has no qualifications for the place. His sponsors and his associates are survivors of the most degraded regime that St. Louis ever knew. He can have no proper motive in aspiring to the place.

"'Without reflecting in any manner upon Cummings or Otto, who are honorable men, the Post-Dispatch believes that it expresses the prevailing sentiment of good citizenship here when it says that those who would bar Walsh's way to this great office should vote at the primaries for William C. Connett.

"'By natural ability, by education, by experience, by character, by temperament, by association and by impulse to do right and to fight for the right, Mr. Connett is unmistakably designated as the man upon whom self-respecting voters should unite for the defeat of Walsh.

"'We hope and believe that Messrs. Cummings and Otto themselves will see the matter in this light and withdraw from the contest.

" 'Whether they remain in the field or not, the duty of Democrats to defeat Walsh is plain and they can do that in no other way so effectively as by uniting upon Mr. Connett at the primaries.'

"Plaintiff further states that the said Henry M. Walsh referred to in this article, is this plaintiff and that it was the intention and meaning of the said article, to damage this plaintiff in his good name and in his practice of his profession as a lawyer and further to damage this plaintiff in his application as a candidate for the office of circuit attorney. Plaintiff further states that the object of said articles was and is to hold this plaintiff up to the scorn, ridicule, contempt and hatred of the public and to the friends and acquaintances of the plaintiff and to deprive the plaintiff of the benefits of public confidence.     Plaintiff further states that the said statements in said libel are untrue and wholly without foundation and are made in a malicious effort on the part of the publishers of the said publication to further the ends of the said defendant and to damage this plaintiff as aforesaid.

"Plaintiff further states that said publication is wilful, wanton and malicious and that he has been damaged thereby in the said city of St. Louis, Missouri, in his reputation, and has been held up to the scorn, ridicule and contempt of his friends and acquaintances and has been rendered odious to the public of the city of St. Louis and has suffered great mental anguish and distress because of said libelous publication; from all of which he has been damaged in the sum of twenty-five thousand dollars for which sum he prays judgment as actual damages.

"Plaintiff further states that by reason of the aforesaid publication and as a means to prevent the further publication of said false and defamatory matter and as punitive damages for the publication of the aforesaid false and defamatory libel plaintiff prays

that he be awarded the sum of twenty-five thousand dollars.

"Plaintiff further prays for the judgment as aforesaid and that the defendant be required to pay the costs of this suit."

The words in the petition alleged to have been libelous are as follows:

"The mere candidacy of such a person as Walsh for such an office should fill the city with alarm. He has no qualifications for the place. His sponsors and his associates are survivors of the most degraded regime that St. Louis ever knew. He can have no proper motive in aspiring to the place."

If these words are libelous *per se,* or as stated in the statute (Sec. 4818, R. S. 1909) they had a tendency "to provoke the appellant to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse," then the petition herein is sufficient; otherwise, not.

It is elementary that alleged defamatory matter comes before the court for construction under the ordinary rules for construing pleadings. Among these is that the pleader is supposed to have stated his case in the manner most favorable to himself. The law will not assume as favorable to a party anything he has not averred. As was said in Holt v. Scholefield, 6 T. R. (Durnford & East) 691: "Either the words themselves must be such as can only be understood in a criminal sense, or it must be shown by the introductory allegations that they have that meaning, otherwise they are not actionable." "Words to be actionable should be unequivocably so." [Harrison v. Stratton, 4 Esp. R. 218.] This was the rule in regard to pleadings in libel cases in the English courts (Folkard, Slander & Libel, 7 Ed., p. 235) and it has been affirmed in many American cases. For instance, where words have two meanings, one of them harmless

and the other injurious, the innuendo may properly point out the injurious meaning. [Curtis v. Iseman, 137 Ky. 796; Joralemon v. Pomeroy, 22 N. J. L. 271; Grant v. N. Y. Herald Co., 138 App. Div. (N. Y.) 727; Gosling v. Morgan, 32 Pa. St. 273.] The libelous language charged to have been employed is to be given its ordinary import and meaning unless an explanation accompanies the words which gives them a different meaning, or unless all the hearers understand that they refer to a transaction which cannot constitute the crime which the words imply. [Klaw v. N. Y. Press Co., 137 App. Div. (N. Y.) 686; Hayes v. Ball, 72 N. Y. 418; Sweaas v. Evenson, 110 Minn. 304.] A court will not in support of a pleading infer a criminal intention when the pleader has not ventured directly to aver its existence. [Grand v. N. Y. Herald Co., 138 App. Div. (N. Y.) 727, 123 N. Y. Supp. 449; Bartholomew v. Bentley, 15 Ohio, l. c. 670.] In recognition and approval of this rule our own courts have asserted a like doctrine in many cases and while it is true that the office of the innuendo or the explanation of defendant's meaning by reference to antecedent matter, in a petition for libel, is simply to apply the defamatory words to the plaintiff, all the averments necessary to a common law pleading to show the meaning of the words must still be made. [Christal v. Craig, 80 Mo. 367, 373; Boyce v. Aubuchon, 34 Mo. App. 315; Kerone v. Block, 144 Mo. App. 575; Newell on Libel and Slander (2 Ed.), p. 619.] This is true notwithstanding the statute (Sec. 1837, R. S. 1909) prescribing that "it shall not be necessary to state in the petition any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose, but it shall be sufficient to state, generally, that the same was published or spoken concerning the plaintiff." The extent of this section of the statute was simply to provide a short form of innuendo in actions

of slander or libel, but not to dispense with the necessity of a statement of sufficient facts by way of inducement to show that words charged to be defamatory *per se* are spoken with a meaning imputing a crime. [Krup v. Corley, 95 Mo. App. 640.]   It is, therefore, still necessary that all the averments required at common law to show the meaning of the words used must be made, and to state so much of the extrinsic facts as will show their meaning and to whom they are applied when such meaning and person are not embraced in the imputed words.   [Flowers v. Smith, 214 Mo. 98; McManus v. Jackson, 28 Mo. 56.] As an innuendo, therefore, cannot serve the purposes of a colloquium where words charged to have been spoken are not libelous *per se,* to make them actionable the colloquium must show that they were used in the connection and sense to render them libelous. [Powell v. Crawford, 107 Mo. 595.]

Where the publication is not libelous *per se,* the use of the *innuendo* in a petition based thereon is not sufficient.   But there should be a colloquium to show that the language was used in such a connection and such a sense as to make it libelous.   [Winsor v. Ottofy, 140 Mo. App. 563.]

After a statement of the general rule as above, we come to the concrete question:   Does the petition state a cause of action against the defendant upon the ground that the application complained of is libelous *per se,* or was it necessary to state extrinsic facts to bring out the defamatory meaning?   An analysis of the words complained of will aid in a determination of this question.   The publication states that "the mere candidacy of such a person as Walsh for such an office should fill the city with alarm."   If sting there be in this statement, it is cured by the sentence following, which declares that "he has no qualifications for the place," thus freeing the publication from any possible reflection upon plaintiff's personal or

professional character and confirming the criticism to his fitness for the place sought, which was clearly permissible.

The remaining portion of the words complained of, are: "His sponsors and his associates are survivors of the most degraded regime that St. Louis ever knew. He can have no proper motive in aspiring to the place." These words in themselves are not libelous, and to have rendered them so it was necessary for the pleading to state in addition thereto facts showing the defamatory meaning of the crime imputed, if one was imputed. [Cook v. Publishing Co., 241 Mo. l. c. 343; Ukman v. Daily Record Co., 189 Mo. 378.] Something more than the mere general allegation as to the character of plaintiff's sponsors and his association with such characters as are designated is necessary to impute a crime to the plaintiff (St. Louis v. Roche, 128 Mo. 541; Ex parte Smith, 135 Mo. 223); and that he "can have no proper motive in aspiring to the place" is not a charge against his character or a reflection on his reputation, but a mere matter of opinion of which the voters are to be the judges. [Sillars v. Collier, 151 Mass. 50; Hogg v. Dorrah, 2 Port. (Ala.) 212, Sweeney v. Baker, 13 W. Va. l. c. 183; Greenwood v. Cobbey, 26 Neb. 449.] Further in regard to plaintiff's "sponsors and associates," as the words are used in the publication, courts cannot be ignorant in court of what they themselves and all others know out of court. The plaintiff is a lawyer, as is evident from his candidacy, and his reputation, even by the laity, is not rated or his character measured by the standing of his sponsors and associates, which we take to mean his clients. The doctrine of *noscitur a sociis* which liberally Englished means "birds of a feather" is not with seriousness applied to a lawyer who, if engaged in the criminal practice, may have a questionable class of clients and yet suffer no discredit therefrom in the estimation of the pub-

lic. There is nothing in the pleading to indicate the result of plaintiff's contest for the nomination, and if the charges alleged to have been made by the defendant had contributed to plaintiff's defeat this fact, we reasonably conclude, would have been pleaded as special damages. In the absence of such an allegation we conclude that the words alleged to have been libelous did not have this effect. In short, the words are not actionable without the statement of extrinsic allegations, because they do not impute an indictable offense for which corporal punishment may be inflicted (Curry v. Collins, 37 Mo. 1. c. 328), nor subject the plaintiff to the "hatred, contempt," etc., defined in the statute (Sec. 4818, supra). When language is ambiguous, and is susceptible of more than one meaning, it is the duty of the plaintiff, especially in a petition charging libel, to point out the meaning which he claims should be applied to the language used, and that upon which he relies to sustain his action; for the defendant is entitled to know the precise charge it has to meet and which it has to deny or justify. This the petition does not do.

While a candidate for a public office is not to be subjected to a discussion in the public press of his reputation or character at the expense of truth, for a lie is never privileged, it is the right and duty of a newspaper to discuss his fitness for the place he seeks, in such a manner as to present the full facts to the electors, either by contrast or comparison with other candidates, or by an analysis of his individual qualifications. [Smith v. Burrus, 106 Mo. 94; Yager v. Bruce, 116 Mo. App. 473; Express Printing Co. v. Copeland, 64 Tex. 354, 24 Am. L. Reg. (N. S.) 640; Rearick v. Wilcox, 81 Ill. 77; Duffy v. N. Y. Evening Post, 96 N. Y. Supp. 629; 25 Cyc. 404.]

Enough has been said to show that the petition does not state a cause of action, hence a discussion of its failure to allege special damages in view of the

fact that the published words complained of are not libelous *per se*, is unnecessary. Some of the authorities here and elsewhere on this subject are: Ukman v. Daily Record Co., 189 Mo. 378, 392; Rammell v. Otis, 60 Mo. 365; Patterson v. Evans, 153 Mo. App. 684; Spurlock v. Lombard Inv. Co., 59 Mo. App. 225; Sillars v. Collier, 151 Mass. 50; Hogg v. Dorrah, 2 Port. (Ala.) 212; Kentucky Journal Pub. Co. v. Brock, 140 Ky. 373; Baxter v. Dorrington, 13 Ariz. 140.

From all of the foregoing we are of the opinion that the action of the trial court in sustaining the demurrer to plaintiff's petition was not error, from which it follows that the judgment must be affirmed, and it is so ordered.

*Brown, P. J.,* and *Faris, J.,* concur.