## No. 15,070.

KNAPP *v.* POST PRINTING AND PUBLISHING COMPANY, ET AL.

(144 P. [2d] 981)

Decided October 11, 1943. Rehearing denied January 10, 1944.

Mr. GEORGE J. KNAPP, pro se.

Messrs. SMITH, BROCK, AKOLT & CAMPBELL, Mr. J. H. SHEPHERD, for defendants in error.

*En Banc.*

MR. JUSTICE GOUDY delivered the opinion of the court.

THIS proceeding is here on writ of error for review of a judgment of the district court of the City and County of Denver dismissing the complaint of plaintiff in error, to whom we hereinafter refer as plaintiff.

December 6, 1940, plaintiff filed his complaint, pro se, against defendants in error, defendants below, hereinafter designated as defendants, for damages in a large amount arising out of their alleged libelous publication of certain statements regarding him in an issue of the Denver Post of September 9, 1940, plaintiff at that time being a candidate for nomination for governor of Colorado at the primary election to be held September 10, 1940.

After motions of defendants to strike and to make the complaint more specific, definite and certain, had been granted in part and denied in part, plaintiff filed a bill of particulars. Thereafter defendants filed their demurrer, based upon the grounds, inter alia, that the complaint did not contain or set forth facts sufficient to constitute a cause of action against them, or any of them; that the words alleged to be libelous were published on a privileged occasion; that the alleged libelous language is expressive only of the opinions of the defendants, and cannot be made the basis of a libel suit by innuendo or otherwise; that the alleged libelous publication is not actionable per se, and will not permit of the recovery of general damages in any event, and no

element of special damage is alleged in the complaint; that the words alleged to be libelous must be interpreted according to their natural, ordinary and commonly-accepted meaning, and, so interpreted, they are harmless and impute no defamation of plaintiff, and such meaning cannot be changed by innuendo.

March 17, 1941, the trial court entered an order sustaining the demurrer, and it was further ordered that "leave to amend the complaint will not be granted." Judgment of dismissal followed in due course.

■ Our Code of Civil Procedure was still in effect March 17, 1941, and section 79 thereof provided, inter alia: "After the demurrer and before the trial of the issue of law therein, the pleadings demurred to may be amended as of course, and without costs, by filing the same as amended, and serving a copy thereof on the adverse party, or his attorney, within ten days, * * *." Construing this section, we stated in *Barnard v. Moore,* 71 Colo. 401, 207 Pac. 332: "We are of the opinion that under the Code, §§79 and 81, the plaintiff, after demurrer sustained, had a right to amend without leave." In the instant case plaintiff waived his right to amend as of course by failing to file an amendment, and serve a copy thereof on the adverse party. *McDonald v. Hallicy,* 1 Colo. App. 303, 29 Pac. 24.

The published article of which complaint is made is:

"Be sure to vote Tuesday—here are marked ballots to help you.

"These marked ballots are published for the convenience of the voters in Tuesday's primary election. Cut out the ballot of your party and take it to the polls with you. It will help you in eliminating the worst * * * and in selecting the best candidates. In publishing these marked ballots The Denver Post is not trying to tell anybody how to vote. It is merely passing on to the voters the results of its investigation of the merits of the various candidates. Few voters know personally all the candidates. Few have an opportunity to check

up for themselves on all the candidates. As a public service, the Post has investigated carefully the candidates on both, Democratic and Republican tickets. For the convenience of the voting public, The Post's conclusions are presented in the form of these marked ballots:

"For Governor " Mark in this
(Vote for one) Column

George E. Saunders Both
John A. Carroll Qualified

George J. Knapp—Not Qualified"

Plaintiff was the only candidate for nomination on either the Democratic or Republican tickets who was designated by the publication as not qualified, but other choices were shown by marking a cross after the preferred candidates.

Plaintiff complains of the orders of the district court on defendants' motion to strike and motion to make more definite and certain, but a review of the complaint and these motions and orders does not convince us that plaintiff was prejudiced by the rulings of the trial judge, nor that this complaint is weakened in the slightest degree thereby. It is unnecessary, however, to give any further consideration to assignments of error thereon, as the judgment is being affirmed on other grounds, and it would make no difference in this opinion had the complaint appeared here in its original form.

A definition of libel which has received general acceptance and approbation is to be found in 33 American Jurisprudence, page 38, section 3. It reads: "A libel is a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one who is dead, or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule." See, also, 36 C.J., p. 1143, §3. Criminal libel in Colorado is defined in sec-

tion 199, chapter 48, '35 C.S.A., in almost identical words, as follows: "A libel is a malicious defamation expressed either by printing, or by signs, or pictures or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby to expose him or her to public hatred, contempt or ridicule."

■ "Words may be actionable per se, that is, in themselves, or they may be actionable per quod, that is, only on allegation and proof of special damage." 33 Am. Jur., p. 39, §5. It is difficult to ascertain from plaintiff's brief what his position is. In some places he contends that the words are libelous per se, in others that they are libelous per quod. In his complaint he has attempted to allege innuendos which are unnecessary, if the words are libelous per se. "Words which are libelous per se do not need an innuendo, and, conversely, words which need an innuendo are not libelous per se." 33 Am. Jur., p. 40, §5.

■ In *Rocky Mountain News Printing Co. v. Fridborn,* 46 Colo. 440, 104 Pac. 956, we said:

"Every false article is not an actionable libel, just as every untruth is not a lie. To be an actionable libel the elements to make it such must be present in the article itself, or fairly implied therefrom and the circumstances surrounding its publication. So if the elements that constitute libel are clearly expressed in the article, it is actionable per se, and becomes conclusive upon the publisher, unless, under the circumstances, the words used were fairly capable of being understood in a special sense, rendering them not defamatory, and that they were so understood.

"The intent of the publisher and the effect of the publication, must be gathered from the words and circumstances under which they were uttered, and the publisher is, prima facie, presumed to have used them in the sense which their use is calculated to convey to

the minds of the readers of the publication. When so construed the words may be defamatory on their face, in which case the action may be maintained, unless the defendant can, and does, allege and prove, that, under the circumstances, they were fairly capable of being understood in a special sense, rendering them not defamatory, and that they were so understood. Or they may not be defamatory on their face, in which case the action cannot be maintained, unless the plaintiff can, and does, show that they were, under the particular circumstances, fairly capable of a special meaning rendering them defamatory and that they were so understood.

"We find in vol. 2, Current Law, p. 707, note, the law applicable to this case stated as follows:

" 'If the words, when construed according to their natural and ordinary meaning, are defamatory on their face, which, as we have seen, is a question of law for the court, the action may be maintained unless the defendant, and the burden is on him, can and does show that they were capable of a special meaning rendering them not defamatory, and that they were so understood. *Peake v. Oldham,* Cowp. 275; Bigelow's Cas. 122; Bigelow's Lead. Cas. 73'."

In *Morley v. Post Printing and Publishing Co.,* 84 Colo. 41, 268 Pac. 540, our court said: "To constitute libel, it is not necessary that a publication shall impute to a person the commission of a crime; it is sufficient if it tends to impeach his honesty, integrity, virtue or reputation. In *Republican Pub. Co. v. Mosman,* 15 Colo. 399, 24 Pac. 1051, we held that any false and malicious writing published of another is libelous per se when its tendency is to render him contemptible or ridiculous in public estimation, or to expose him to public hatred or contempt, or to hinder virtuous men from associating with him. It is not necessary that the publication shall produce those results; it is sufficient if it has a tendency to produce any one of them. A news-

paper publication must be measured by its natural and probable effect upon the mind of the average lay reader. *Dusabek v. Martz,* 121 Okl. 241, 249 Pac. 145, 49 A.L.R. 253. 'In determining whether words are libelous, they are to be given their ordinary and popular meaning; and if they are susceptible of two meanings, one libelous and the other innocent, the former is not to be adopted and the latter rejected as a matter of course, but it must be left to the jury to determine in what sense they are used.' *Black v. State Co.,* 93 S.C. 467, 77 S.E. 51, Ann. Cas. 1914 C, 989. 'It is generally held to be the function of the court to determine, as a question of law, whether a published statement is libelous per se, and if the words are unambiguous and admit of but one sense, the question whether they are defamatory is one which the court must decide, * * *'."

Testing the publication in question by the above definitions, we have no hesitation in pronouncing it not libelous per se. The words are not defamatory on their face, and cannot have the special meaning which plaintiff attempts to ascribe to them.

██ As the complaint contains no allegation of special damages, it is insufficient to state a cause of action on the words as libelous per quod. But it contains many innuendoes, and, in fact, would have little value as a complaint if the innuendoes were stricken; so that plaintiff apparently cannot be alleging the words as libelous per se. Yet his brief so contends, and he has cited a large number of authorities thereon which he contends are pertinent. It seems to us that the only question for determination here is the one resolved by the trial judge—that is, that the words "worst" and "not qualified," as applied to plaintiff, and considered in the light of the entire publication, were not libelous per se.

██ Considering the complaint in the light of the alleged facts set forth by way of innuendo, we do not find the words "worst," and "not qualified," fairly capable of the meaning which plaintiff ascribes to them,

or of any meaning which is defamatory. In construing words alleged to be libelous we cannot travel into the realm of conjecture, but must confine ourselves to the natural, ordinary and commonly-accepted meaning of the words themselves, considered in connection with the other facts alleged in the complaint. The expression of the opinion of representatives of the Post, that plaintiff is not qualified for the public office to which he aspires, is not actionable per se. The word "worst" is a relative term, and did not refer to the plaintiff alone; but even if it did, it would not carry the meanings which plaintiff by his allegations attempts to ascribe to it.

Webster's New International Dictionary (2d ed.) defines "qualified" as, "Possessed of certain qualities or capacities, especially good qualities; fitted by accomplishments or endowments for certain purposes; competent; fit." Also, "Having complied with the specific requirements or precedent conditions for an office, appointment, employment, etc." The synonyms are: fitted, capable; the antonyms are: incompetent, unfit.

A newspaper may state of a candidate for public office that he has no qualifications for the place, and this statement contains no possible reflection upon the plaintiff's personal or professional character, but, being confined to a criticism of his fitness for the place sought, is clearly permissible. *Walsh v. Pulitzer Publishing* Co., 250 Mo. 142, 157 S.W. 326.

One who is a candidate for an office at the hands of the people invites consideration of his qualifications, and tenders, as an issue to be tried out publicly before the people, his honesty, integrity and fitness for the office to be filled. *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281, 130 A.S.R. 390; *Schull v. Hopkins,* 26 S.D. 21, 127 N.W. 550, 29 L.R.A. (N.S.) 691; 17 R.C.L., p. 353, §101.

Liberty of the press must remain an undefined term, and while certain boundaries within which it must

be exercised are discernible, precise rules to govern it on particular occasions cannot be formulated in advance. It implies a right to freely publish whatever the citizen may please, and to be protected against responsibility therefor, unless such publication is a public offense because of blasphemy, obscenity or scandalous character, or, because of falsehood and malice, it injuriously affects the standing, reputation or pecuniary interests of individuals. Cooley, Const. Lim. (7th ed.) 603, 604; *Coleman v. MacLennan, supra.*

 It is one of the hazards which a candidate for public favor must face that he is exposed to critical, and perhaps unjust, comments, but these, unless they transcend the bounds of what the law permits, must be borne for the sake of maintaining a free press. Where actions for libel based upon such criticism have been sustained, the words used have been adjudged to contain a charge of positive misconduct. *Sillers v. Collier,* 151 Mass. 50, 23 N.E. 723, 6 L.R.A. 680. There is authority which places candidates for public office in the same situation as other private individuals and denies the application of any doctrine of privilege in publishing matters concerning such candidates. 17 R.C.L., p. 354, §101. We do not believe that such a rule is compatible with a free press.

Finding no error which justifies reversal, the judgment is affirmed.