Robert WEGNER, Plaintiff,

v.

The RODEO COWBOYS ASSOCIATION,
Inc., a Colorado corporation; and
George Williams, Defendants.

Civ. A. No. 67–C–451.

United States District Court
D. Colorado.

Oct. 2, 1968.

Kripke, Hoffman, Carrigan & Dufty, Kenneth N. Kripke, Denver, Colo., for plaintiff.

Dickerson, Barry & Dwyer, F. E. Dickerson and William F. Dwyer, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The defendants have moved for a new trial and for judgment notwithstanding the verdict of the jury. This is a defamation suit in which the plaintiff seeks damages for the alleged publication of a libel or libels. The evidence shows that he was, prior to January 4, 1967, a professional rodeo contestant and the former world's champion bull rider.

In essence, the charge described in the complaint is that the defendants suspended him as a member of The Rodeo Cowboys Association and then carried out a campaign to discredit him by publishing in Rodeo Sports News, a paper of the Association which is widely distributed, articles designed to injure his reputation.

Briefly, the evidence shows that plaintiff was seeking to promote a rival organization which would introduce team competition in rodeos and that the defendant Association ordered him to refrain from further efforts along this line and required him to post a $500.00 good conduct bond. This action was taken on January 4, 1967. Thereafter, he sought to resign from the Association. However, the resignation was not accepted and subsequently the board met and suspended him and gave wide circulation to his suspension. They revoked the bond and charged him with unauthorized use of the name of one Casey Tibbs, a member of the Association.

Although plaintiff maintained that the case was one in defamation *per se*, the case was tried on the basis that the words were not libel *per se*, but did involve the plaintiff's trade or business so that special damages were not essential. The jury was told that malice had to be established (to defeat privilege), and that the defamation had to be false (in order to defeat the defense of truth). The jury was allowed to consider award of general damages, but was not required to find special damage because of the fact that the defamation fell into an excepted category, that of injury to the plaintiff's trade or business. The jury returned a verdict of $5,000.00 actual damages and $20,000.00 exemplary damages.

On the motion for new trial, it is contended, *first*, that the verdict for exemplary damages is excessive on its face, being wholly disproportionate to the

verdict for actual damages and, *secondly*, it is contended that since this Court determined that the case was one in defamation *per quod* rather than defamation *per se*, pleading and proof of special damage was an indispensable element of the case. We have heard oral arguments, have considered briefs and researched the questions presented. We have concluded that the motions should be denied for the reasons that are expounded in this Memorandum Opinion and Order.

■ It is generally held that exemplary damages must be fairly proportionate to actual damages and if there is a wide disproportion, it shows that the jury was motivated by prejudice. See, e. g., the recent decision of the United States Court of Appeals for the Tenth Circuit in Dearmore v. Gold, 400 F.2d 887 (September 10, 1968).

■ The Colorado Supreme Court has spoken on this question on a number of occasions, but has not considered a defamation case such as the one at bar. The Colorado Court has announced that exemplary damages are reasonable if they bear some relation to the compensatory award, that is if the punishment is proportionate to the injury resulting from the act.[1] From a reading of the cases, one could gain the impression that the proportion must always be substantially equal. At the same time, it is generally agreed that it does not have to be a fixed or definite mathematical ratio.[2] Nevertheless, the courts invariably examine and use the ratio, together with the particular facts presented, in order to ascertain whether the exemplary damage award seems unreasonable. A dramatic example of this is found in Bangert v. Hubbard, 127 Ind.App. 579, 126 N.E.2d 778 at 782, 143 N.E.2d 285, 67 A.L.R.2d 395 (1955). Here the Court held that where the exemplary damages were 104

1. Kresse v. Bennett, 151 Colo. 549, 379 P.2d 807, 808 (1963); Barnes v. Lehman, 118 Colo. 161, 193 P.2d 273, 274 (1948); Starkey v. Dameron, 92 Colo. 420, 21 P. 2d 1112, 1113, 22 P.2d 640 (1933).

2. Bell v. Preferred Life Assurance Soc'y, 320 U.S. 238, 242, 64 S.Ct. 5, 88 L.Ed. 15 (1943); Finney v. Lockhart, 35 Cal. 2d 161, 217 P.2d 19 (1950); Note, Exemplary Damages in the Law of Torts, 70 Harv.L.Rev. 517, 530 (1957).

times the compensatory damages and there were other facts indicating improper influences on the jury, the verdict could not stand.

In the recent opinion of the Court of Appeals for the Tenth Circuit in Dearmore v. Gold, supra, the actual damage verdict was in the amount of $841.54, and the compensatory award was $10,000.00. The Court of Appeals pointed out that the award for punitive damages was approximately eleven times greater than the award for actual damages and noted that the two awards were so extremely disproportionate that the Court would have to assume that the jury acted either with passion or prejudice "or with a complete misapprehension of the role of punitive damages." It is noteworthy that the plaintiff there considered the punitive award to have been made for the purpose of compensating for future medical expenses and pain and suffering (a wholly invalid concept).

■ The courts do, however, sometimes allow high-proportion exemplary damage awards when they feel that the facts justify such awards.[3] For example, the United States Supreme Court has recently affirmed a libel verdict in which the punitive damages were 6½ times

greater than the actual damages.[4] It would appear, therefore, that in most jurisdictions at least this requirement that there be proportion between the general award and the exemplary award is used as a test so as to allow the court to set aside verdicts which it regards as excessive under the facts and the evidence presented.[5]

Our interest here is the law of Colorado, and there have been several decisions of the Colorado Supreme Court which have involved assaults or negligence in which the Court has either reduced or reversed cases where the exemplary awards were substantially larger than actual damages.[6] Indeed, one commentator has concluded that exemplary damages are reasonable in Colorado "only if such award does not exceed the amount of compensatory or actual damages." Comment, 35 Colo.L.Rev. 394 (1963). We cannot agree that such a mechanical rule has been adopted by the Colorado Supreme Court. Rather, it would appear that the Court is concerned that the punishment may, so to speak, fit the crime. Indeed, there have been Colorado decisions which have upheld exemplary damage awards in which the amount of the exemplary award has exceeded the actual award.[7] One case up-

3. Malco, Inc. v. Midwest Aluminum Sales, Inc., 14 Wis.2d 57, 109 N.W.2d 516, 521 (1961) (libel verdict of $500.00 actual and $7,500.00 exemplary reinstated).

4. Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). The jury awarded $60,000.00 actual and $3,000,000.00 punitive damages, but the trial court judge remitted this sum to $400,000.00 punitive damages. 225 F.Supp. 916, 920 (N.D.Ga.1964). The Supreme Court rejected constitutional arguments that (1) punitive damages against a magazine publisher are a prior restraint on free speech, and (2) the interest in publishing materials pertaining to public figures should limit the amount of punitive damages that may be awarded for libel. 388 U.S. at 160–161, 87 S.Ct. 1975.

5. Morris, Punitive Damages in Tort Cases, 44 Harv.L.Rev. 1173, 1180 (1931). The author, discussing the reasonable rela-

tionship test purporting to guide the determination of the size of punitive damage verdicts, concluded:
"This test is probably more often a rationalization of results than a means of obtaining them. The proper ratio between actual damages and punitive damages is placed at a figure which supports the judge's view of the verdict, formulated before the test is thought of." Id. at 1180.

6. Kresse v. Bennett, supra, ($1,000.00 exemplary and $225.00 actual for assault reduced); Barnes v. Lehman, supra, ($2,000.00 exemplary and $500.00 actual for assault reduced); Starkey v. Dameron, supra, ($2,000.00 exemplary and $100.00 actual for injuries from concealed spring gun reversed); Page v. Yool, 28 Colo. 464, 65 P. 636 (1901) ($4,950.00 exemplary and $25.00 actual for destruction of property reversed).

7. Starkey v. Dameron, 96 Colo. 459, 45 P.2d 172 (1935) ($1,500.00 exemplary

held a verdict in which the exemplary damages were three times greater than the actual damages. Surprisingly, this involved cruelty to animals rather than to human beings.[8]

As suggested above, there is inconsistency in the Colorado cases. One such case involved the use of a spring gun concealed in a gasoline pump. The reason for the Court's conclusion that the exemplary damages were too high was that the gun was not set with the plaintiff in mind. The facts of many of the other cases were not such as to justify an exemplary award substantially in excess of the general damages.[9]

■■ It is important to keep in mind that exemplary damages are awarded for the purpose of punishing persons who have inflicted injuries with malice. That being so, the degree of malice should

determine the amount of the exemplary award.[10] There is also a deterrent aspect in the award of exemplary damages and this is thwarted if the law will not permit a high award of exemplary damages where the degree of malice is great.[11] A defamation case presents somewhat different considerations than the assault and battery type of case. There may be good reason in this latter kind of case to maintain a reasonable proportion between actual and exemplary damages. The assault or battery usually results from an impulsive act on the part of the defendant, and there is every reason to require that the punishment be closely related to the magnitude of the harm inflicted. In defamation, however, the plaintiff might have a superior reputation not susceptible to injury, or the defendant could have a very poor reputation for truth and veracity. As a result, there would be

and $900.00 actual for personal injuries from concealed spring gun); Kendall v. Lively, 94 Colo. 483, 31 P.2d 343 (1934) ($275.00 exemplary and $200.00 actual for slander); Bullerdick v. Pritchard, 90 Colo. 272, 8 P.2d 705 (1932) ($700.00 exemplary and $600.00 actual for willful trespass with sheep).

8. Bolten v. Gates, 105 Colo. 571, 100 P.2d 145 (1940) ($1,000.00 exemplary and $350.00 actual for wanton and reckless treatment of cattle upheld).

9. The cases cited previously which resulted in either a reduction or reversal of the exemplary award do not present appropriate factual situations for awarding exemplary damages in a high proportion to actual damages. Starkey v. Dameron, 92 Colo. 420, 21 P.2d 1112, 22 P.2d 640 (1933), where plaintiff was injured by a spring gun concealed in a gasoline pump, presents the strongest case because spring guns are arguably so dangerous that those who use them should be punished substantially. The Court, however, did not take this view of the use of the spring gun, and ordered a new trial because it was not shown that the defendants "set the gun with this plaintiff in mind, or with any other purpose in view than protection to their property." 21 P. 2d at 1113–1114. Kresse v. Bennett, supra, involved an assault by an 80 year old woman upon her 76 year old neighbor. In Barnes v. Lehman, supra, involving an assault outside a courtroom, there was mitigating evidence of provoca-

tion. And in Page v. Yool, supra, the court questioned the jury's finding of malice. Thus, with the possible exception of Starkey v. Dameron, these cases do not present that quantum of malice which warrants an exemplary award in high proportion to actual damages.

10. See Morris, supra, at 1182; Note, supra, at 531.

11. Morris, supra, at 1182. The author questioned the desirability of rules such as the Colorado requirement that exemplary damages must be proportionate to the injury done:

"The misleading character of the ratio test is emphasized when it is remembered that the 'compensatory' damages are usually admonitory as well as reparative. When an act with a vicious tendency happens to result in a small injury the 'compensatory' damages are necessarily small. If it must follow that the punitive damages must also be small, the total verdict might be lenient where severity is desirable. On the other hand, if the 'compensatory' damages are large, the defendant is severely admonished without the addition of any punitive damages; but in such a case the ratio test counsels large punitive damages, and may result in over-severity entirely unnecessary for the proper working of the admonitory function. So the ratio test seems to be an impediment in many cases, rather than a good legal tool." Id.

little actual injury to the plaintiff. At the same time, the defendant might have been actuated by malice of the worst kind. To require a low-proportion exemplary award in this type of case would allow a malicious defendant to defame someone and escape without punishment.[12]

There is no definitive Colorado case dealing with defamation. However, other jurisdictions which generally require a reasonable relationship between exemplary and general damages have upheld exemplary award in libel cases in much higher proportion than the 4 to 1 ratio that is found here.[13]

■ We conclude that the Colorado Court has not laid down a hard and fast rule which requires that the present verdict be upset. Furthermore, in the instant case the jury was at liberty to conclude that the defendants deliberately and premeditatedly set out to discredit the plaintiff so as to deter him in his effort to establish a competing organization. The jury was very carefully instructed as to the necessity for proof of and the nature of malice as applied in the present context. There is no basis for concluding that the jury verdict resulted from passion or prejudice, and the disproportion in the award does not by itself or in conjunction with the other evidence raise any such inference. To order the plaintiff to renounce part of this verdict or to grant a new trial would constitute arbitrary capricious action on the part of the Court.

■■ The remaining question which deserves some comment is the contention of defendants that special damages were an essential part of the case and that the jury should have been so instructed, the Court having ruled that the defamation was *per quod* rather than *per se.* This was a case in which the Court felt that the suspension in and of itself of the plaintiff was not the factor which constituted the defamation, but that rather it was the manner of suspension and the falsity of the representation that the plaintiff had done something wrong, together with the possible malice of the defendants in carrying it out. It was with this in mind that we ruled that the defamation was not *per se;* that it would require extrinsic evidence.

In Colorado there are distinct facets of defamation *per se.* The first of these concerns whether extrinsic evidence must be produced in order to establish that the words spoken were defamatory. See Knapp v. Post Printing and Publishing Company, 111 Colo. 492, 144 P.2d 981 (1943), and see Morley v. Post Printing and Publishing Company, 84 Colo. 41, 268 P. 540, 542 (1928).

The second aspect, and the one with which we are here concerned, is that of special damages. If the words are libelous *per quod,* there can be recovery only if the plaintiff proves special damages. See *Knapp* and *Morley,* supra, and see Restatement of the Law of Torts, § 569.

---

12. Reynolds v. Pegler, D.C., 123 F.Supp. 36, aff'd, 2 Cir., 223 F.2d 429, cert. denied, 350 U.S. 846, 76 S.Ct. 80, 100 L.Ed. 754 (1954). The plaintiff in this libel action received $1.00 actual damages and $175,000.00 exemplary damages. Although New York law did not require that exemplary damages bear a relationship to the allowance of actual damages, the defendant argued that such a relationship should be the law. The Court rejected this argument:
"To adopt the contrary view now urged by the defendants would mean that a defamer gains a measure of immunity no matter how venomous or malicious his attack simply because of the excellent reputation of the defamed;

it would mean that the defamer, motivated by actual malice, becomes the beneficiary of that unassailable reputation and so escapes punishment." 123 F.Supp. at 38.

13. See, e. g., State Press Co., Inc. v. Willett, 219 Ark. 850, 245 S.W.2d 403 (1952) (libel verdict of $1,400.00 exemplary and $100.00 actual affirmed); Finney v. Lockhart, 35 Cal.2d 161, 217 P.2d 19 (1950) (defamation per se verdict of $2,000.00 exemplary and $1.00 general affirmed); Malco, Inc. v. Midwest Aluminum Sales, Inc., 14 Wis.2d 57, 109 N.W. 2d 516 (1961) (libel verdict of $7,500.00 exemplary and $500.00 actual reinstated).

There are, however, exceptions to this special damage rule. One well recognized exception obtains where the libelous imputation affects another's trade, profession, or office. As applied to a libel case, this rule is a broad one which includes defamatory utterances imputing any misconduct whatever in the conduct of the other person's calling. Comment *e*, § 569 of Restatement of the Law of Torts treats this as defamation *per se:*

"Under the rule stated in § 573, it is slanderous to publish spoken words which attribute to the other conduct or characteristic incompatible with the proper conduct of his lawful trade or profession or with the proper discharge of his duties as a public officer. Any charge of this kind which if spoken is actionable per se as slander is sufficient to support an action under the rule stated in this Section, if the publication is in libelous form. There is, however, a residuum of charges which are actionable as libels under the rule stated in this Section although they would be insufficient to support an action for slander under the rule stated in § 573. Thus, to constitute a libel it is enough that the defamatory utterances impute any misconduct whatever in the conduct of the other's calling. The charge of a single act of misconduct may be sufficient to support an action for libel, although such a charge does not necessarily imply that want of skill, learning or competence which the public reasonably demands of those who carry on a trade, business, or profession and thus would not be actionable per se as slander (see § 573, Comment *d*). So, too, it may be libelous to impute to the other misconduct in the conduct of his trade, business, or profession, or in the discharge of his duties as a public officer, although he is at the time no longer engaged in the pursuit of the trade, business or profession or has ceased to be the incumbent of the office (compare § 573, Comment *c*)."

The same result is reached if it is approached as an exception to the special damage rule. That this exception long recognized in slander cases applies fully to libel is shown by a relatively recent decision of the Colorado Supreme Court in Bernstein v. Dun & Bradstreet, Inc., 149 Colo. 150, 368 P.2d 780, wherein the Court said:

"At the early common law all libel, of whatever kind, was actionable without the pleading or proof of special damages. Gradually, however, there developed in American Jurisprudence a distinction between libel *per se* and libel *per quod* to the effect that any libel which carried its defamatory imputation on its face was actionable without an allegation or proof of damages. See for example McKenzie v. Denver Times, 3 Colo.App. 554, 34 P. 577 (1893). But any libel which did not carry such imputation on its face was held to be actionable only where special damages were pleaded and proved. *Knapp* supra; *Brown* supra [Brown v. Barnes, 133 Colo. 411, 296 P.2d 739]. Later, further gloss was added to this area of the law, and today the rule accepted by the majority of courts may be stated as follows:

'Any libel which carrie[s] its defamatory imputation upon its face [is] still held to be actionable without proof of damage. But any libel which [does] not [is] held to be actionable only where slander would be actionable—which is to say, when special damage was pleaded and proved, or the case fell into one of the four exceptional slander categories, of the imputation of crime, loathsome disease, defamation affecting business, or unchastity on the part of a woman.' Prosser, 'Libel Per Quod', 46 Va.L.Rev. 838, 844 (1960).

We point out here that Dean Prosser in the article above cited states that all of this rule is applicable in Colorado on the basis of *Knapp*, supra. A careful reading of the *Knapp* case indicates that not all of the quoted rule is extractable therefrom, the reason being that in *Knapp* it was not necessary to

determine the exceptions based on slander *per se* and the court did not do so, nor do we do so now though we do not disagree with it."

The Court then went on to hold that the libel was not *per se*, but, secondly, ruled that it did not in that case defame the plaintiff's business or professional reputation. It is clear from the decision, however, that had the Court concluded that the defamation affected the defendant's business or reputation, the need for proof of special damage would have been dispensed with.

 The remaining inquiry is whether the plaintiff was entitled to have the jury determine general injury to his reputation. On this the law is very clear. In fact, it is set forth in Prosser's handbook, Prosser on Torts, 3rd Edition, page 779, where the author states:

"On the other hand, once the cause of action is established, either by the character of the defamation itself or by the proof of pecuniary loss, the bars are lowered, and 'general' damages may be recovered for the injury to the plaintiff's reputation, his wounded feelings and humiliation, and resulting physical illness and pain, as well as estimated future damages of the same kind. In other words, such damages are insufficient in themselves to make the slander actionable, but once the cause of action is made out without them, they may be tacked on as 'parasitic' to it. The tendency has been to leave the amount to be awarded, within very wide limits, to the jury; and there has been a wide range of variation, running from six cents to $1,000,000 in compensatory damages with an additional $1,250,000 in punitive damages."

We have considered the very recent decision of our Court of Appeals in M. F. Patterson Dental Supply Co. v. Wadley, 401 F.2d 167 (Tenth Cir.). There the Court was applying Oklahoma law and the trade or business exception to the special damage rule was neither presented nor considered.

We have also carefully examined Dean Prosser's articles in 46 Va.L.Rev. 839 and 79 Harv.L.Rev. 1629. Our conclusions are in harmony with his analysis.

We conclude then that with the engrafting of the special damage rule to libel cases, the exceptions also become a part of the rule. Accordingly, there is no basis whatever for granting a new trial, and we conclude that the motion for new trial and judgment notwithstanding the verdict be and the same are hereby denied.