SUNWARD CORPORATION, et al., Plaintiffs,

v.

DUN & BRADSTREET, INC., Defendants.

Civ. A. No. 82–K–147.

United States District Court, D. Colorado.

Aug. 2, 1983.

---

William E. Murane, and A. Bruce Jones, Holland & Hart, Denver, Colo., for plaintiffs.

Fred H. Bartlit, Jr., Bruce A. Hubbard, Kirkland & Ellis, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This defamation action was filed under this court's diversity jurisdiction, Title 28 U.S.C. Section 1332. Plaintiffs are affiliated corporations, incorporated under the laws of the State of Wyoming with their principal place of business in Colorado. They are engaged in the manufacture and sale of unassembled steel buildings. D & B is a Delaware corporation with its principal place of business in New York. It collects and disseminates information relating to the financial standing, credit, character, responsibility and general reputation of persons, firms and corporations engaged in business. It provides this information to subscribers for a fee. In 1974 and until the present, Sunward has refused to provide defendant with any information regarding the corporations and has advised D & B that no information concerning Sunward should be provided to others.

The amended complaint alleges that since 1974, and particularly on September 15, 1981, D & B has provided information con-

cerning Sunward to subscribers and that these reports contain false, libelous and defamatory matter. Plaintiffs notified defendant that the information contained in the September, 1981 credit report was false and defamatory. D & B informed Sunward that it was its practice to "estimate" a corporation's financial condition based on its own observations if that corporation refused to provide the requested information. After an October, 1981, meeting with Sunward at D & B's Denver office, D & B sent a notice to all subscribers asking them to disregard the credit information in the September 15, 1981 report concerning Sunward.

Plaintiffs' four causes of action allege libel, damages for impairment of reputation, diminution of credit ratings as a result of defendant's wanton and reckless disregard of plaintiffs' rights, loss of sales, profits and credit worthiness, and libel *per se* based on alleged statements by defendant that plaintiffs were "under investigation" or on a "watch list." Sunward seeks compensatory, punitive, special and actual damages plus injunctive relief.

D & B's motion for summary judgment argues that the credit reports are not libelous, that they are protected by a qualified privilege, that Sunward's claim for punitive damages is not supported by allegations contained in the amended complaint, and that D & B's alleged statements that Sunward was "under investigation" are neither slanderous nor libelous *per se.*

Summary judgment under Rule 56, F.R.Civ.P. is a drastic remedy that is appropriate only where there exists no genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1383 (10th Cir.1980); *Jones v. Nelson,* 484 F.2d 1165, 1168 (10th Cir.1973). Under the rule, no margin exists for disposition of factual issues, and it does not serve as a substitute trial of the case nor require the parties to dispose of the litigation through affidavits. *Commercial Iron & Metal Co. v. Bache & Co.,* 478 F.2d 39, 41 (10th Cir.1973). As I recently discussed in *Walters v. Linhof,*

559 F.Supp. 1231 (D.C.Colo.1983), under the right circumstances, summary judgment has been "frequently granted" in defamation actions. Defendant has not met the requisite standard of proof in this action, and for the following reasons, the defendant's motion for summary judgment is denied in part, and granted in part.

## I. LIBEL PER SE

I note in passing that "[i]n actions involving slander, there is always a temptation to write a treatise on the subject. [I] shall attempt to suppress that tendency and deal only with the specific issues at hand." *Cinquanta v. Burdett,* 154 Colo. 37, 39, 388 P.2d 779 (1963) (Pringle, J.).

D & B claims it is entitled to summary judgment on the first and third claims for relief because Sunward has not been libeled. "Even assuming that each fact in the reports alleged to be incorrect by the plaintiffs was in error, the D & B reports are not libelous." *Defendant's Brief* at 3. Sunward claims it was libeled when D & B misidentified one of its affiliated companies; incorrectly identified the corporate officers' names; badly underestimated the number of employees, the amount of total sales, and the value of its inventory and fixtures; incorrectly designated the businesses in which Sunward was engaged; and misdescribed some of Sunward's sales territory.

For language to be libelous *per se,* the facts or reports must be deplorable, derogatory, or disgraceful, and the element of disgraceful imputation must be clearly expressed on the face of the writing. *Bernstein v. Dun & Bradstreet,* 149 Colo. 150, 368 P.2d 780, 784 (1962). In evaluating a statement or article alleged to be libelous *per se,*

the court must interpret alone, without aid of inducements, colloquialisms, innuendos, and explanatory circumstances. To be libelous per se, the publication must contain defamatory words specifically directed at the person claiming injury, which words must, on their face, and

without the aid of intrinsic proof be unmistakably recognized as injurious. (Citations omitted.)

*Inter-State Detective Bureau v. The Denver Post,* 29 Colo.App. 313, 484 P.2d 131, 133 (1971). Words which require an innuendo are not libelous *per se.* In determining whether words are libelous, they are to be given their ordinary and popular meaning. *Knapp v. Post Printing and Publishing Co.,* 111 Colo. 492, 144 P.2d 981 (1943).

■ I agree with D & B that these inaccuracies and misstatements are not libelous *per se.* The language in the reports is neutral in content, neither scurrilous nor inflammatory. Only by going beyond the face of the report would the defamation become clear. As such, I find the issue is whether the report is libel *per quod.*

## II. LIBEL PER QUOD

■ D & B argues that since its reports require reference to extrinsic facts to establish the defamatory meaning, Sunward cannot recover unless it proves the libel caused special damage to it. D & B suggests that Sunward has been unable to produce any evidence after a year of discovery that it was damaged by the reports. As far as it goes, D & B is correct. Libel *per quod,* like slander, typically is actionable only where special damages are pleaded and proved.[1] *Bernstein v. Dun & Bradstreet, supra,* suggests that an action for libel *per quod* does not require proof of special damages where mercantile dishonesty or insolvency is imputed. Judge Doyle amplified this suggestion in *Wagner v. Rodeo Cowboys Assoc.,* 290 F.Supp. 369 (Colo.1968):

> There are, however, exceptions to this special damage rule. One well recognized exception obtains where the libelous imputation affects another's trade, profession or office. As applied to a libel case, this rule is a broad one which includes defamatory utterances imputing any mis-

conduct whatever in the conduct of the other's calling.

\* \* \* \* \* \*

That this exception long recognized in slander cases applies fully to libel is shown by a relatively recent decision of the Colorado Supreme Court in *Bernstein v. Dun & Bradstreet.* . . .

*Wegner v. Rodeo Cowboys Association,* 290 F.Supp. 369, 374 (D.C.Colo.1968). *And see Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 408 F.Supp. 1219, 1234 (D.C.Colo.1976), *modified on other grounds,* 561 F.2d 1365 (10th Cir.1977).[2]

■ It is beyond cavil that a Dun & Bradstreet rating is directed to and concerns the business of the subject of the report. D & B is recognized as a leading disseminator of information concerning financial standing, credit, character, responsibility and general reputation of business entities. In the instant action, plaintiffs, multi-million dollar affiliate corporations with hundreds of employees, were characterized as a business employing only five persons with sales in the range of $500,000 to $750,000. This is not a good reference for a company engaged in the manufacture and sale of steel buildings and could reflect on plaintiffs' fitness to conduct its business. I hold that the facts of this case fall within this recognized exception, that damages are presumed and need not be specifically alleged as argued by defendant. Defendant's motion for summary judgment on this ground is denied.

## III. QUALIFIED PRIVILEGE

After a good deal of confusion in their briefs, the parties are in agreement that this motion for summary judgment does not involve a constitutional privilege based on the First Amendment. D & B argues, however, that its reports are protected by a

---

1. *See Cinquanta v. Burdett,* 154 Colo. 37, 388 P.2d 779 (1963).

2. *See Restatement (Second) Torts,* § 573:
 One who publishes a slander that ascribes to another conduct, characteristics or a condi-

tion that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm.

common-law, qualified privilege. This privilege, it contends, applies to any communication made in good faith where the parties making and receiving the communication have corresponding legal, social or moral duties to do so. Because credit reporting is a necessary business service and there is evidence of abundant good faith on D & B's part with no evidence of actual malice, D & B argues that summary judgment must be granted in its favor. Plaintiffs argue that defendant is not entitled to a qualified privilege for this report and that the issues of malice and good faith are questions precluding summary judgment.

The law of defamation provides two types of privilege: absolute and qualified. "A privileged communication is an exception to the rule that every defamatory publication implies *malice.*" *Denver Public Warehouse Co. v. Holloway,* 34 Colo. 432, 83 P. 131, 132 (1905). Absolute privileges arise in communications published in judicial or legislative proceedings, executive communications, communications between husband and wife, political broadcasts and consent. Defendant in this action is not claiming an absolute privilege but a qualified one which is lost if the defendant steps outside the scope of the privilege, abuses the privilege, chooses an unreasonable or inappropriate method of publication or acts with a wrong state of mind. The privilege may also be lost if the defendant does not believe what he says. *See,* Prosser, *Law of Torts,* § 115 (4th ed. 1971).

Qualified privileged communications are those that are fairly made by a person in the discharge of some public or private duty, whether moral or legal, or in the conduct of his own affairs and in matters where his interest is concerned. *See, Restatement of the Law, (Second) Torts* § 595. The immunity conferred is not absolute but is conditioned upon publication in a reasonable manner and for a proper purpose. I have previously analyzed the law of qualified privilege in *Williams v. Burns,* 463 F.Supp. 1278 (D.Colo.1979) and adopt that analysis here.

Credit reporting agencies have been denied the privilege in some courts, *Johnson v. Bradstreet Co.,* 77 Ga. 172 (1886); *Pacific Packing Co. v. Bradstreet Co.,* 25 Idaho 696, 139 P. 1007 (1914), but the majority have recognized that these agencies perform a useful public service for the benefit of those who have a legitimate interest in obtaining the information, and who require the agency to obtain it for them. Such agencies are held to have a qualified privilege where these inquiries are honestly made and the information is furnished to the subscriber in good faith. *Anderson v. Dun & Bradstreet, Inc.,* 543 F.2d 732, 734 (10th Cir.1976); *H.E. Crawford Co. v. Dun & Bradstreet, Inc.,* 241 F.2d 387 (4th Cir.1959); *Watwood v. Stone's Mercantile Agency,* 194 F.2d 160, 30 A.L. R.2d 772 (D.C.Cir.1952), *cert. denied,* 344 U.S. 821, 73 S.Ct. 18, 97 L.Ed. 639, *reh. denied,* 345 U.S. 960, 73 S.Ct. 935, 97 L.Ed. 1380 (1953); *A.B.C. Needlecraft Co. v. Dun & Bradstreet, Inc.,* 245 F.2d 775 (2d Cir. 1957); *Koral Sales Co. v. Dun & Bradstreet, Inc.,* 389 F.Supp. 985 (E.D.Wis.1975); *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.,* 286 F.Supp. 899 (W.D.Pa.1968), *vacated on other grounds,* 308 F.Supp. 1068 (1970); *Pomeroy v. Dun & Bradstreet, Inc.,* 146 F.Supp. 59 (D.Or.1956); *Retail Credit Co. v. Garraway,* 240 Miss. 230, 126 So.2d 271 (1961); *Barker v. Retail Credit Co.,* 8 Wis.2d 664, 100 N.W.2d 391; *Cullum v. Dun & Bradstreet, Inc.,* 228 S.C. 384, 90 S.E.2d 370 (1955).

The question whether credit reporting agencies are protected by a qualified privilege is a matter of state law. *Anderson v. Dun & Bradstreet, Inc.,* 543 F.2d at 736. While the Colorado courts have not addressed the question of whether credit agencies have this immunity, they have recognized qualified privileges for some communications. *Costa v. Smith,* 601 P.2d 661 (Colo.App.1979); *Abrahamsen v. Mountain States Telephone and Telegraph Co.,* 177 Colo. 422, 494 P.2d 1287 (1972); *Coopersmith v. Williams,* 171 Colo. 511, 468 P.2d 739 (1970); *Ling v. Whittemore,* 140 Colo. 247, 343 P.2d 1048; *Bereman v. Power Publishing Co.,* 93 Colo. 581, 27 P.2d 749; *Melcher v. Beeler,* 48 Colo. 233, 110 P. 181; *Hoover*

v. *Jordan*, 27 Colo.App. 515, 150 P. 333; *Denver Public Warehouse Co. v. Holloway, supra.*

 *Abrahamsen, supra,* dealt with an inter-office communication. Defendant claimed a qualified privilege and the court said:

> whether in a particular case a publication is to be deemed privileged (that is, whether the situation of the party making it and the circumstances attending it were such as to rebut the legal inference of malice) is one of law to be determined by the court. However, the existence of malice, the question of good faith on the part of defendants, and their honest belief in the truth of the statements put forth by them, all are matters of fact which are to be determined exclusively by the jury.

494 P.2d at 1289. If given the opportunity to consider the question, I think the Colorado courts would follow the majority and extend the qualified privilege to credit reporting agencies. I hold that D & B may be protected with a conditional immunity for its reports. Whether this privilege has been abused is a question of fact. Plaintiffs have averred that defendant acted in bad faith and with malice. Defendant has refuted these contentions. Because they are issues of fact which "are to be determined exclusively by the jury," the motion for summary judgment on the first and third claims of the complaint on this ground is denied.

### IV. CLAIM FOR EXEMPLARY DAMAGES

Defendant has also moved for summary judgment on plaintiffs' second cause of action, which alleges that the acts of defendant were in wanton and reckless disregard of the rights of plaintiffs thus entitling plaintiffs to exemplary damages in the amount of $10,000,000. Plaintiffs contend that whether punitive damages are appropriate is a question for the jury.

 Colo.Rev.Stat. § 13–21–102 (1973, as amended) states:

> *Exemplary damages.* In all civil actions in which damages are assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

It is well settled that exemplary or punitive damages are not compensatory in nature but are for the purpose of punishment of the wrongdoer as an example to others. *Mince v. Butters,* 200 Colo. 501, 616 P.2d 127 (1980); *Beebe v. Pierce,* 185 Colo. 34, 521 P.2d 1263 (1974); *Ark Valley Alfalfa Mills, Inc. v. Day,* 128 Colo. 436, 263 P.2d 815 (1953); *Wegner v. Rodeo Cowboys, supra.* To recover exemplary damages, plaintiff must first show actual damages, *Wagner v. Dan Unfug Motors, Inc.,* 35 Colo.App. 102, 529 P.2d 656 (1974); *Leo Payne Pontiac, Inc. v. Ratliff,* 29 Colo.App. 386, 486 P.2d 477 (1971), and the exemplary damages must bear some relation to the compensatory damages awarded. *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., supra; Wegner v. Rodeo Cowboys, Inc., supra; Ark Valley Alfalfa Mills, Inc. v. Day, supra.* Conduct which is merely negligent cannot serve as a basis for a punitive damage award. *Frick v. Abell,* 198 Colo. 508, 602 P.2d 852 (1979). Generally, greater punitive damages are allowed in defamation cases. *Wegner v. Rodeo Cowboys, supra.* In all cases, it is within the province of the jury to determine the proper amount of exemplary damages, *Mince v. Butters, supra; Leo Payne Pontiac v. Ratliff, supra,* but it is a question for the court as to whether there is any evidence to justify a finding of exemplary damages. Such a finding cannot be made at this time. Because defendant's motion as to the claim for punitive damages is premature, the motion for summary judgment as to the second claim for relief is denied.

### V. THE ORAL COMMUNICATIONS

 Defendant additionally moves for summary judgment of plaintiffs' fourth

claim for relief. This claim seeks relief based on alleged oral statements of defendant to prospective dealers and others that plaintiffs were "under investigation" or on a "watch list." The amended complaint characterizes these statements as libel *per se.* Libel is written defamation and slander is oral defamation. Plaintiffs' response brief concedes that these oral statements cannot be libel, but are slander *per se.*

D˙ & B contends that in one year of discovery, only a single conversation was found where the caller was told that Sunward was "under investigation" and that no evidence has surfaced that the words "watch file" were used in connection with Sunward. D & B further argues that when the words "under investigation" were used, the caller was additionally told that the fact that no report was being issued did not indicate that Sunward was in financial difficulty. Plaintiffs assert that because the statements adversely affect their business relations, they are slander *per se* and D & B's disclaimer still left the caller with a negative meaning.

 The analysis set out in Part II, *supra,* need not be repeated; it is applicable here as well. At this juncture, I have considerable doubt that the terms "under investigation" or "watch file" are defamatory under any circumstance. I hold that they do not constitute slander *per se.* At most they may be slander *per quod.* Such a determination is not possible in summary proceedings. Therefore, the motion for summary judgment on the fourth claim for relief is denied.

## VI. PRAYER FOR INJUNCTIVE RELIEF

In its prayer for relief contained in the amended complaint, Sunward asks

> For a preliminary injunction and a permanent injunction prohibiting Defendant from making statements concerning Plaintiffs, as set forth in the Fourth Cause of Action, and affirmatively requiring Defendant to state in response to future inquiries by third parties concerning Plaintiffs only that Dun & Brad-

street, Inc., does not have information concerning Plaintiff corporation or any of them.

D & B argues that the request for injunction is prior restraint and inappropriate absent a breach of contract or trust, and because plaintiffs seek no damages on this count, summary judgment should enter in its favor. Plaintiffs counter that because the remedies at law are inadequate due to the difficulty in determining the extent of harm caused by defendant's actions, injunctive relief is appropriate and defendant's reliance on First Amendment prior restraint is misplaced.

 Generally, the First Amendment prohibits prior restraint through injunction, and torts against the person such as defamation may not be enjoined. *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Alberti v. Cruise,* 383 F.2d 268 (4th Cir.1967); *Konigsberg v. Time, Inc.,* 288 F.Supp. 989 (S.D.N.Y.1968). There is usually an adequate remedy at law to redress injury to personal rights. *Alberti, supra; Galella v. Onassis,* 353 F.Supp. 196 (S.D.N.Y.1972) *aff'd and modified,* 487 F.2d 986 (2nd Cir.1973); *Dickson v. Dickson,* 12 Wash.App. 183, 529 P.2d 476 (1974). However, First Amendment rights are not absolute, and if the First Amendment right is not deemed paramount, injunctive relief is appropriate if there is no adequate remedy at law. *Wynn Oil Co. v. Purolator Chemical Corp.,* 536 F.2d 84 (5th Cir.1976); *Galella v. Onassis, supra.* Defamatory speech is not protected by the First Amendment, *Beauharnais v. Illinois,* 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1951). A showing of continuing libel attacks has been required in at least one court before an injunction would issue. *Mescalero Apache Tribe v. Allen,* 81 N.M. 561, 469 P.2d 710 (1970).

 Although defamatory speech is not protected by the First Amendment, there has been no showing that D & B continues to report inaccurate information concerning Sunward. The request for a preliminary injunction is denied.

IT IS ORDERED that defendant's motion for summary judgment is denied in part and granted in part.