**FEDERAL TRADE COMMISSION, Plaintiff,**

v.

**FREECOM COMMUNICATIONS, INC., Defendant.**

**No. 96–C–492 S.**

United States District Court, D. Utah, Central Division.

June 3, 1997.

---

Jeffrey S. Gray, Asst. Attorney General, Salt Lake City, UT, David M. Newman, Ralph E. Stone, Federal Trade Commission, San Francisco, CA, Sohni Z. Bendiks, Federal Trade Commission, Denver, CO, Richard D. Burbidge, Salt Lake City, UT, for Plaintiff.

Richard W. Casey, Milo Steven Marsden, Stephen R. Waldron, Salt Lake City, UT, Edward F. Glynn, Jr., Washington, DC, for Defendant.

## MEMORANDUM & ORDER

BOYCE, United States Magistrate Judge.

This matter came on for hearing on defendants' motion for a protective order against the Federal Trade Commission (FTC) to preclude it from making further allegedly improper comments about defendants and their business activities (File Entry # 107). The defendants contend the FTC or its agents have made improper press releases that if continued could destroy the defendants' business and the defendants' existence as corporate or other legal entities. Defendants assert that the FTC has issued the press releases for the particular purpose of putting defendants out of business without benefit of a proper legal determination. Defendants are the objects of the FTC's efforts in this litigation to preclude certain alleged practices of defendants.

■ The defendants acknowledge that Congress has specifically authorized the FTC to make news releases under 15 U.S.C. § 46(f) ("To make public from time to time such portions of the information obtained by it hereunder as are in the public interest ...”). The decision to make such a release is discretionary with the FTC and not generally subject to judicial review. *Fleming v. F.T.C.*, 670 F.2d 311 (D.C.Cir.1982). However, it is the defendants' position that the FTC has acted beyond its statutory authority and is acting not to provide information for the purpose of informing the public but has acted to destroy or potentially destroy defendants' economic and business functions and possibly defendants' existence. Defendants contend this exceeds the allowance of 15 U.S.C. § 46(f).

■ An initial question is whether the court has jurisdiction to entertain defendants' motion for a protective order. The court would have authority to restrict counsel

or a party from making public statements if there were a substantial likelihood that any declaration would preclude a fair trial. *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991); *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). There is no presumption of potential prejudice, it must be clearly shown. *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). In this case, the trial and hearing are equitable, no jury is involved. Defendants have not shown factual justification for a restriction against the FTC in order to insure a fair trial.

■ A challenge to the FTC's alleged activities could be brought by an independent action, which has been the approach used in other cases challenging FTC actions with regard to release of information. e.g. *Exxon Corp. v. F.T.C.,* 589 F.2d 582 (D.C.Cir.1978); *Bristol–Myers Co. v. F.T.C.,* 424 F.2d 935 (D.C.Cir.1970). Whether this court has inherent authority to enjoin the FTC, a party, by a motion, must depend on whether the offensive conduct is related to this litigation and somehow threatens the efficacy of the litigation. If the court's jurisdiction would be lost or a likely remedy rendered ineffectual, the provisions of 28 U.S.C. 1651, the All Writs Act, may allow this court to act to enjoin the offensive conduct. In addition, the court may have some form of inherent authority to intervene to protect the court's responsibilities. *Degen v. United States,* —— U.S. ——, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Therefore, without specifically deciding that the defendants' motion is a proper way to proceed, to obtain the relief sought, the court will address other issues relevant to the determination of the motion.

■ The defendants complain the FTC was responsible for the release of three forms of public press information which related to the defendant businesses and may have harmed defendants. The first press release that is complained about is a communication to Dun & Bradstreet. The communication by Loretta Kraus, an Investigator for the Denver office of the FTC, advised Dun & Bradstreet, during a telephone call from Dun & Bradstreet, that a Temporary Restraining Order had been entered against defendants by this court. That statement was true. Ms. Kraus also advised that the FTC had not been successful in obtaining an asset freeze. That was true, although some freeze of assets was granted. The statement was more beneficial to defendants than if the statement had been fully accurate. Finally, Ms. Kraus advised that a receiver had not been appointed. When Dun & Bradstreet published its Business Informations Report on the matter, its report was in error in two respects. First, the report said an asset freeze had been granted which was partially, but not fully, correct. The report also indicated a receiver was appointed. That statement was untrue. Defendants were, however, able to effect a correction of the error. There is no evidence as to the source that Dun & Bradstreet used for its report, whether it was the FTC or some other source. There is no evidence the FTC gave Dun & Bradstreet any incorrect information or was responsible for the errors in the Dun & Bradstreet report.

The defendants' second complaint is as to press releases issued to the Salt Lake Tribune and other media in this geographical area by David M. Newman, lead counsel in this case for the FTC. These were letters to bring to the attention of local media the substance of the FTC's amended complaint in this case. The part of the communication about which defendants complain states (Exhibit D):

I invite you to take a look at the evidence in the files of the District Court. That evidence shows that the defendants have misrepresented what the purchasers of their business offerings achieved, thus misleading consumers about how successful their business offerings are. The defendants continue to use success stories and testimonials that are simply false. The result is that thousands of people have bought defendants' business opportunities based on an exaggerated impression of how viable they are.

It is obvious to the reader that this is a statement of opinion of the writer and not

particularized fact. It is not highly inflammatory. There is no evidence this statement was itself disseminated to the public in the same form as written. There is no evidence the statement did any particular harm or damage to the defendants. Just what information was actually published has not been provided.

At hearing on this matter, Mr. Newman indicated he had received approval from FTC public relations personnel to make the press release. He did not intend to make a false statement or harm defendants. However, Newman indicated he had no intention of making any further public statements as to matters involved in this litigation. Therefore, there is no evidence of any likelihood of future repetition of the statements or matters akin thereto that Newman previously made. There is no evidence of any likelihood of future irreparable harm to defendants.

The third circumstance that defendants complain about is a news release by the Utah Consumer Rights Agency. There is no indication this news release was instigated or prepared by the FTC. Further, there is no showing such release was outrageous or likely to injure defendants. Although local counsel for the FTC in this case is an Assistant Attorney General for Utah and represents the Utah consumer agency, there is no showing of any collusive action or pressure by the FTC or the State agency to cause injury to the plaintiffs.

Other press or news release or public expressions by the FTC about this matter, based on the documents submitted to the court, appear to be simply informational and were made some time ago.

The defendants have suggested the news releases by the FTC have not been in accord with FTC policy manuals or regulations. However, defendants have failed to carry their burden of showing what are the policy procedures within the FTC, where they were violated, or whether any such policy is for internal purposes or to protect the public. Whether such policies would bear on this case is speculative and problematical at this point.

In *F.T.C. v. Cinderella Career & Finishing Schools, Inc.*, 404 F.2d 1308 (D.C.Cir.1968) a declaratory and injunctive suit was brought against the FTC by plaintiff corporations, which had been the object of an FTC enforcement action, to prevent news releases, by the FTC, detrimental to plaintiff's businesses. The trial court issued an injunction. The Court of Appeals reversed. The enforcement proceedings were still before the FTC, a circumstance not present in this case. The Court referred to 15 U.S.C. § 46(f). The Court said the FTC had authority to issue press releases and the ones in question were within FTC discretion. The Court noted the public interest and the fact there was no deliberate false statement. 404 F.2d at 1314. The Court observed:

> If the unsophisticated consumer is to be protected in any measure from deceptive or unfair practices, it is essential that he be informed in some manner as to the identity of those most likely to prey upon him utilizing such prohibited conduct. Certainly advice through news media as to the actions being taken by a government agency in his behalf constitutes a prophylactic step addressed ultimately to the elimination of the conduct prohibited by the statute.

404 F.2d at 1314.

The Court also noted that Congress had long been aware and acquiesced in the FTC's practice. Id. The mere fact the press release may have a deleterious effect on the defendants' business was not a basis for injunctive relief. *Id.* at 1316.

Defendants, in this case, have also invoked *B.C. Morton Int'l Corp. v. FDIC*, 305 F.2d 692 (1st Cir.1962) to support their motion. In that case, the Court held a independent suit for injunctive relief could be maintained against the FDIC where the allegations were that a press release was issued which deliberately misrepresented the law and was for the purpose of injuring the plaintiff's business.[1] No like circumstances exist in this case and *B.C. Morton International Corp.* does not have application to the factual circumstances in this case.

---

1. See also *Lothschuetz v. Carpenter,* 898 F.2d 1200 (6th Cir.1990).

The defendants have not shown acts of misconduct that would allow this Court to find that the FTC exceeded its authority under 15 U.S.C. § 46(f).

■ During the course of argument on this motion, counsel for defendants asserted there was no First Amendment interest that was involved. It would appear that the Supreme Court has not considered to what extent the Government or an agency has a speech interest under the First Amendment. Public employees have protected First Amendment rights, including those related to their employment activities. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *United States v. National Treasury Employees Union*, 513 U.S. 454, 466–68, 115 S.Ct. 1003, 1013, 130 L.Ed.2d 964 (1995). However, the employee right is not absolute. *Civil Service Comm'n v. Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2889–90, 37 L.Ed.2d 796 (1973) (Hatch Act); *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947) (same); *Snepp v. United States*, 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (Restriction on CIA employee's publication of material concerned with National Security).

■ In addition, prior restraint to prevent a public publication is almost never appropriate. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Nebraska Press Association v. Stuart*, supra; *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). See also *CBS v. Davis*, 510 U.S. 1315, 114 S.Ct. 912, 127 L.Ed.2d 358 (1994) (Blackman J. as Circuit Judge); *Columbia Broadcasting Systems Inc. v. U.S. District Court for Central District of California*, 729 F.2d 1174 (9th Cir.1984). Although these cases considered restraints imposed against private expression, the concern about the need for full and robust debate on public issues was central to the holdings. See also *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ( ... "debate on public issues should be uninhibited, robust, and wide open ...").

Counsel for defendants is correct that the Supreme Court has never addressed in First Amendment terms a restraint on government speech. However, in Ronald D. Rotunda and John E. Nowak, *Treatise on Constitutional Law*, 2d Ed. § 20.11 (1992) it is stated:

The most direct way for government to enter the political marketplace is to have government officials or agencies issue messages or reports designed to convince the public to support governmental positions on domestic or foreign policy. There are not yet any Supreme Court decisions that directly and clearly define the limitations that would be placed on such activity. This absence of case law may be considered a strength rather than a weakness of the democratic system, for there has not been a clear need for the Court to intervene to establish precise limits on propaganda efforts by government agencies in the United States. However, with the growing number of reports that are issued by the government and the increasing potential for the governmental use of electronic media (such as the Congressional television network on cable television) there is interest in exploring the limits on government speech.

Undoubtedly there is a valid public interest, and first amendment value, in the government conveyance to the public of information regarding government programs. Governmental activities-from Congressional reports to presidential news conferences, or reports of executive agencies-provide the basis for the discussion and debate of self-governance issues which have been a touchstone value in first amendment analysis.

Recently, Yale Law School Professor Owen M. Fiss noted the state may be "a friend of speech" *The Irony of Free Speech*, p. 83 (1996) and the state may have a legitimate role in fostering speech and providing public information. The limits of this role need not be explored here. However, the Court should be hesitant to restrain the Government in speaking out about matters of public

concern absent some very strong overriding showing of inappropriate harm. The defendants have not shown such a circumstance in this case.

Although, defendants merely seek a protective order and have not proceeded to obtain specific injunctive relief under Rule 65, F.R.C.P., the equitable principles pertinent to injunctive relief have an analogous application in this situation. There must be an adequate showing of the need for the relief to prevent future harm. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Sunward Corp. v. Dun & Bradstreet, Inc.,* 568 F.Supp. 602, 609–610 (D.C.Colo.1983). In this case, in light of attorney Newman's statement that he does not contemplate a further press release and the efficacious effect of this motion in directing the FTC to the proper use of 15 U.S.C. § 46(f), this Court does not believe a need has been shown for the relief sought in defendants' motion. Therefore, the remedy of a protective order is not necessary.

**IT IS HEREBY ORDERED** the motion of defendants for a protective order to restrict press and news releases of the FTC and its agents is denied.